DECISION. *Page 2 
{¶ 1} Mary Rosemond, George Williams, and Andre Woodcock planned to rob a cab driver. After cab driver Timothy Deger drove the trio to their destination, Williams demanded money from Deger and then shot him to death. Rosemond, Williams, and Woodcock laughed as they got out of Deger's cab and ran away.
 {¶ 2} Within hours, the three were arrested. Woodcock initially told police that he was not involved in planning the robbery. The three were charged with aggravated murder and aggravated robbery.
 {¶ 3} Woodcock later gave police a statement implicating himself and the others in the offenses, and he agreed to cooperate in the prosecutions of Rosemond and Williams.
 {¶ 4} Rosemond now appeals her convictions for murder and aggravated robbery, with accompanying firearm specifications. In two assignments of error, Rosemond argues that the trial court erred by (1) denying her permission to impeach Woodcock with a tape-recorded prior statement, and (2) refusing to allow the testimony of an expert witness to explain her laughter following the murder. We find no merit in either assignment of error.
 The Court Properly Limited Recross-Examination {¶ 5} In her first assignment of error, Rosemond contends that the trial court erred "by barring [her] from playing a tape impeaching the credibility of a witness who appeared for the prosecution." During recross-examination of Woodcock, Rosemond sought to introduce a tape recording of his prior inconsistent *Page 3 
statement, even though she had already, during cross-examination, impeached him with the statement without proffering the recording itself.
 {¶ 6} The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant's right to confront the witnesses against him. "The right of confrontation, which is secured for defendants in state as well as federal criminal proceedings, `means more than being allowed to confront the witness physically.' Indeed, `[t]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.'"[1]
 {¶ 7} While a defendant has a well-established right to cross-examine the witnesses against him, the opportunity to recross-examine a witness is within the discretion of the trial court.[2] Generally, a court need not allow the defense an opportunity to recross-examine unless the prosecution inquires into new areas during redirect examination.[3]
 {¶ 8} In this case, Woodcock testified on direct examination that he, Rosemond, and Williams had planned the robbery. Woodcock admitted that when he was arrested, he had told police that he was not involved in the robbery plan. Woodcock said that his attorneys had recently contacted prosecutors about a potential plea bargain in exchange for his cooperation in his co-defendants' cases.
 {¶ 9} On cross-examination, defense counsel questioned Woodcock extensively about the two statements he had made to police, the first made on the night of his arrest, in which he had denied his involvement in the offenses, and the *Page 4 
second made on the day before his testimony in Rosemond's case, in which he had admitted his involvement.
 {¶ 10} Defense counsel asked Woodcock if his attorneys, who were present during Rosemond's trial, had discussed with him "what was transpiring right here in the courtroom." At a sidebar conference, counsel explained to the court that his questioning was meant to suggest the possibility that, despite the court's separation-of-witnesses order, Woodcock had been kept abreast of the trial proceedings.
 {¶ 11} On redirect examination, the prosecutor offered into evidence Woodcock's most recent statement to police in an effort to rebut defense counsel's insinuation that Woodcock had fabricated his testimony and had conformed his version of events to that of the state's earlier witnesses. Woodcock testified on redirect that he had not been told about any other witness's testimony.
 {¶ 12} On recross-examination, defense counsel sought to introduce a tape recording of Woodcock's first statement to police in which he had denied involvement in the offense. The trial court permitted defense counsel to conduct recross-examination within the scope of the prosecutor's redirect examination, but it refused to admit into evidence the tape recording of Woodcock's prior statement.
 {¶ 13} We find no abuse of discretion by the trial court. The prosecutor did not inquire into new areas during redirect examination, but simply rebutted defense counsel's suggestion of improper influence. The court did not deny Rosemond the opportunity to confront Woodcock with his first statement to police. On the contrary, defense counsel had thoroughly questioned Woodcock about the statement during cross-examination. Because the matter could have been, and was, raised *Page 5 
during cross-examination, any further inquiry would have been redundant.[4] In preventing Rosemond from further challenging Woodcock with respect to his first statement, the court reasonably exercised its discretion in determining that the subject had been exhausted.[5]
Accordingly, we overrule the first assignment of error.
 The Court Properly Excluded Expert Testimony {¶ 14} In her second assignment of error, Rosemond argues that the trial court erred by excluding expert testimony that she suffered from posttraumatic stress disorder ("PTSD") resulting from an earlier unrelated incident. She sought to introduce the evidence to explain her laughter following Deger's murder.
 {¶ 15} Under Evid.R. 702, a witness who is qualified as an expert and whose testimony is based on reliable scientific, technical, or other specialized information may testify as an expert about "matters beyond the knowledge or experience possessed by lay people." A trial court retains broad discretion in determining the admissibility of evidence, including expert witness testimony.[6] Thus, we will not reverse its decision absent an abuse of discretion.[7]
 {¶ 16} According to defense counsel, the psychologist would have explained that "laughter doesn't always mean that something is funny," and that Rosemond's PTSD would have had an impact upon her emotional response to the murder.
 {¶ 17} Certainly, the fact that laughter can be the product of more than one state of mind is well within a layperson's knowledge or experience. So to the extent *Page 6 
that the defense wanted to show that a person might laugh for reasons other than amusement, no expert testimony was needed.
 {¶ 18} Moreover, the trial court could have reasonably concluded that expert testimony would not have appreciably aided the defense's claim that Rosemond was unaware that the crime was about to be committed and that the proffered evidence would have served to confuse or mislead the jury.[8] And in any event, counsel could have argued that Rosemond's laughter was not the product of callousness, without the aid of expert testimony. Accordingly, we hold that the trial court did not err in refusing to admit the psychologist's testimony.
 {¶ 19} We overrule the second assignment of error and affirm the judgment of the trial court. Judgment affirmed.
HILDEBRANDT, P.J., and CUNNINGHAM, J., concur.
[1] Delaware v. Van Arsdall (1986), 475 U.S. 673, 678, 106 S.Ct. 1431, quoting Davis v. Alaska (1974), 415 U.S. 308, 315-316,94 S.Ct. 1105.
[2] See State v. Faulkner (1978), 56 Ohio St.2d 42, 46,381 N.E.2d 934. See, also, Van Arsdall, supra, at 679.
[3] Id. See, also, Alford v. United States (1931), 282 U.S. 687, 694,51 S.Ct. 218.
[4] See State v. Hartley, 8th Dist. No. 81706, 2003-Ohio-3946.
[5] See Alford, supra, at 694.
[6] See State v. Thomas, 97 Ohio St.3d 309, 2002-Ohio-6624,779 N.E.2d 1017, at ¶ 46; State v. Hartman, 93 Ohio St.3d 274, 285, 2001-Ohio-1580,754 N.E.2d 1150.
[7] See State v. Slagle (1992), 65 Ohio St.3d 597, 602,605 N.E.2d 916, citing State v. Hymore, (1967), 9 Ohio St.2d 122, 128,224 N.E.2d 126.
[8] Evid.R. 403(A). *Page 1