OPINION
{¶ 1} This matter is before the Court on the Notice of Appeal of Paul A. Massie, filed March 23, 2007. On August 31, 2006, at around 10:30 a.m., Officer Steve Cockrell of the Fairborn Police Department observed Massie traveling at an excessive rate of speed on West Dayton-Yellow Springs Road. Using radar, Cockrell clocked Massie's speed at 57 m.p.h. in a 35 *Page 2 
m.p.h. zone. Cockrell initiated a stop of Massie's vehicle. When he approached Massie's car, Cockrell noticed three or four cans of beer on the passenger floorboard of the car. Massie smelled of alcohol. Massie was unable to locate his driver's license but handed Cockrell several other documents. Cockrell instructed Massie to exit his car to perform three field sobriety tests, and, based on Massie's performance, Cockrell concluded that Massie was impaired. Cockrell then placed Massie under arrest. Massie was transported to the Fairborn police station, where he agreed to undergo a breathalyzer test.
 {¶ 2} Cockrell administered a BAC DataMaster test three times to Massie in short succession before a valid result was obtained. After the first two attempts produced invalid samples, the result of the third test indicated that the concentration of alcohol in Massie's breath was .241 grams of alcohol per 210 liters of breath. Massie was charged with operating a vehicle under the influence of alcohol and having a concentration of seventeen-hundredths of one gram or more by weight of alcohol per two hundred ten liters of breath, in violation of R.C.4511.19 (A)(1)(a) and (h), along with speeding violations.
 {¶ 3} On September 11, 2006, Massie pled not guilty to the charges against him. On October 18, 2006, Massie filed a Motion to Suppress, seeking to exclude the results of the field sobriety tests and the results of the BAC DataMaster test, and on December 21, 2006, Massie filed a Motion in Limine, seeking to exclude the breath test results as being scientifically unreliable, pursuant to Daubert v. Merrell DowPharmaceuticals, Inc. (1993), 509 U.S. 579, 113 S.Ct. 2786,125 L.Ed.2d 469. A hearing was held on the motions on January 8, 2007, and the trial court overruled the motions. On September 1, 2006, the speeding charges and the charge pursuant to R.C. 4511.19(A)(1)(h) were dismissed, and Massie pled no contest to violating R.C. *Page 3 4511.19(A)(1)(a). He received a sentence of 25 days in jail and three years probation. On March 8, 2007, Massie filed a Motion to Vacate Previous Plea, and the trial court overruled the motion.
 {¶ 4} Massie asserts two assignments of error, which we will consider together. They are as follows:
 {¶ 5} "THE TRIAL COURT ABUSED ITS DISCRETION IN EXCLUDING EVIDENCE FROM THE HEARING ON THE MOTION IN LIMINE BECAUSE THE RULES OF EVIDENCE DO NOT APPLY TO INITIAL ADMISSIBILITY DETERMINATIONS AND SUPPRESSION HEARINGS."
 {¶ 6} And,
 {¶ 7} "THE TRIAL COURT ABUSED ITS DISCRETION IN RULING ADMISSIBLE SCIENTIFICALLY UNRELIABLE BREATH TEST RESULTS FROM THE BAC DATAMASTER."
 {¶ 8} Massie argues that the trial court improperly failed to consider evidence that the BAC DataMaster used to test him malfunctioned earlier in the day when another officer administered a breath test to another defendant. Specifically, Massie sought to introduce two Subject Test Forms and two corresponding Evidence Tickets from the BAC DataMaster, dated August 31, 2006, for a defendant named Brody Nein. The first Form has a test ID. # of 06-286, and indicates a test result of 0.233 g/210L. The second Form has a test ID. # of 06 — 287, and indicates that Nein refused the subsequent test. One of the Evidence Tickets indicates "subject sample .233", at 07:36, and the other indicates "subject sample refused", at 07:46. The court, according to Massie, also should have considered a memorandum, dated December 14, *Page 4 
1998, from the Bureau of Alcohol and Drug Testing, to all BAC DataMaster Sites, providing, "Effective immediately, an `invalid sample' indication on the BAC Verifier or BAC DataMaster is to be handled by initiating a new 20 minute observation period. The reason for this change is due to the fact that `invalid sample' may be caused by different things. The operator will no longer have to decide exactly what may have caused the `invalid sample,' the remedy will always be a new observation period." Massie further argues, "based on the unusual output of the BAC DataMaster earlier in the day with the `refused' result, the number of attempts required to achieve a valid breath test, combined with the brief amount of time between breath test attempts, the court could not have a reasonable degree of certainty that the BAC test results were accurate."
 {¶ 9} The State initially argues that we may "only review an order stemming from a motion in limine if the error is preserved by a proffer of evidence or a timely objection at trial," and that Massie failed to properly preserve the issue for appellate review. The State goes on to argue that the evidence was properly excluded because Cockrell lacked personal knowledge of the documents Massie sought to introduce. In Reply to the State's argument regarding waiver, Massie argues, "when a motion in limine is treated as a motion to suppress, the trial court's ruling on the motion is preserved for review."
 {¶ 10} We agree with Massie that there is no waiver. "Prior to trial, any party may raise by motion any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue." Crim.R. 12(C). "The plea of no contest does not preclude a defendant from asserting upon appeal that the trial court prejudicially erred in ruling on a pretrial motion, including a pretrial motion to suppress." Crim. R. 12(I). "The *Page 5 
determination of whether a motion is a `motion to suppress' or a `motion in limine' does not depend on what it is labeled. It depends on the type of relief it seeks to obtain." State v. Davidson (1985),17 Ohio St.3d 132, 135, 477 N.E.2d 1141, at ¶ 4; City of Defiance v. Kretz (1991),60 Ohio St.3d 1, 4 ("the defense to a charge under R.C. 4511.19(A)(3) is destroyed where the breathalyzer test result is declared valid after a pretrial challenge. If the defendant pleads no contest after such a ruling, judicial economy will be served by appeal of the pivotal issue rather than forcing the defendant through a futile trial. The defendant must, of course, enter a plea of no contest and a judgment must be rendered or there would be no final appealable order"). Massie's motion, characterized as in limine, sought a judgment suppressing evidence, and thus we find no waiver.
 {¶ 11} As noted above, Massie's motion was based uponDaubert. "In Daubert, the United States Supreme Court addressed the issue of when expert scientific testimony is relevant and reliable. The court held that courts should consider several factors when evaluating the reliability of scientific evidence, including whether the theory or technique has been tested, whether it has been subject to peer review, whether there is a known or potential rate of error, and whether the methodology has gained general acceptance. Id. at 593 — 594. The inquiry is flexible, but `[t]he focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.' Id. at 595.
 {¶ 12} * * *
 {¶ 13} "Decades ago, in the case of Westerville v. Cunningham (1968),15 Ohio St.2d 121, 44 O.O.2d 119, 239 N.E.2d 40, the Supreme Court of Ohio acknowledged that alcohol breath-testing devices `are today generally recognized as being reasonably reliable on the issue *Page 6 
of intoxication when conducted with proper equipment and by competent operators.' Id. at 123, 239 N.E.2d 40. More recently, the Ohio General Assembly has legislatively determined that various alcohol determinative testing apparatuses are generally reliable and admissible. Section4511.19 of the Ohio Revised Code provides, in pertinent part:
 {¶ 14} `(D)(1) In any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section or for an equivalent offense, the court may admit evidence on the concentration of alcohol, drugs of abuse, or a combination of them in the defendant's whole blood, blood serum or plasma, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within [three] hours of the time of the alleged violation. * * * The bodily substance withdrawn * * * shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code.'
 {¶ 15} "In the case of State v. Vega, (1984) 12 Ohio St.3d 185,12 OBR 251, 465 N.E.2d 1303, the Supreme Court of Ohio held that R.C. 4511.19
represents a legislative determination that certain breath testing devices are generally reliable. This determination, the court explained, means that the statute has replaced the common law foundational requirements for admissibility. The court also explained that the foregoing passage of R.C. 4511.19 means that the legislature has delegated to the Director of the Ohio Department of Health, not the courts, the discretionary authority to determine which tests and procedures are generally reliable and thus admissible in a prosecution under the statute. Therefore, the Vega court held, `an accused may not make a general attack upon the reliability and validity of the breath testing instrument.' Id. at 190, 465 N.E.2d 1303. *Page 7 
 {¶ 16} "Since Vega, the Supreme Court of Ohio has repeatedly and consistently held that, `[t]he admissibility of test results to establish alcoholic concentration under R.C. 4511.19 turns on substantial compliance with ODH regulations.' (Internal citations omitted). This holding recognizes that the General Assembly has legislatively provided for the admission into evidence of alcohol test results, including breath tests, from tests conducted upon those accused of violating R.C. 4511.19, so long as such tests were conducted in accordance with procedures adopted by the Director of the Ohio Department of Health.
 {¶ 17} "This legislative mandate for admissibility obviates the need for trial courts to determine admissibility based upon reliability of the processes and methods underlying the use of breath testing machines. It follows, then, that because the Daubert inquiry involvesonly determinations as to the reliability of the principles and methods upon which a particular scientific test result is based, the legislative mandate recognized in Vega forestalls the need for any Daubert analysis * * * ." State v. Luke, Franklin App. No. 05AP-371, 2006-Ohio-2306.
 {¶ 18} Of important note, however, "the Vega court said, `[t]here is no question that the accused may also attack the reliability of the specific testing procedure and the qualifications of the operator. * * * Defense expert testimony as to testing procedures at trial going to weight rather than admissibility is allowed.'" Id. In other words, an accused "`may endeavor to show something went wrong with his test and that, as a consequence, the result was at variance with what the approved testing process should have produced.'" Id. (Internal citation omitted).
 {¶ 19} Ohio Admin. Code 3701-53-02 lists the BAC DataMaster as an approved instrument for determining whether an accused's breath contains a prohibited concentration of alcohol and directs that "[b]reath samples shall be analyzed according to the operational *Page 8 
checklist for the instrument being used and checklist forms recording the results of subject tests shall be retained in accordance with paragraph (A) of rule 3701-53-01 of the Administrative Code."
 {¶ 20} Unlike the Ohio Admin. Code provision above, "`[A] directive from a memorandum does not rise to the level of an administrative regulation, and is not enforceable.' State v. Gigliotti (Dec. 22, 2000), 6th Dist. No. E-99-081, at 6. See, also, State v.Reiger, 5th Dist. No. 02CA30, 2002-Ohio-6673 at ¶ 13."State v. Hayes, Medina App. No. 04CA0105-M, 2005-Ohio-6607 (finding "substantial compliance with the regulations that were actually in place," and admitting the results of defendant's second breath test, which was administered four minutes after the initial test produced an invalid result, where defendant argued that the State failed to comply with the December 14, 1998 memorandum at issue in this matter). But see,State v. Markin, Franklin App. No. 01AP-1208, 2002-Ohio-4326 ("For purposes of our analysis, we assume, without deciding, that an additional 20-minute observation period is required before a breath test may be readministered after an initial test yields an invalid sample reading").
 {¶ 21} At the hearing on the motion in limine, the following exchange occurred regarding the exhibits that Massie sought to admit:
 {¶ 22} "Mr. Ross: What we would be prepared to show is, my client took 3 breath tests that day. The first two were invalid samples. And the time period that elapsed between each sample we would not feel is scientifically reliable based on the Ohio Department of Health and other reliable information dealing with mouth alcohol.
 {¶ 23} "Secondly, there was another gentleman that took a test within hours of my client beforehand, and very strange results occurred with that one, almost the same score as my client. *Page 9 
And 10 minutes after he took the breath test, the machine spit out a ticket, saying * * * he refused, after he had given a sufficient sample. I feel I'm entitled to ask about those issues regarding reliability of my client's breath test on that day.
 {¶ 24} "* * *
 {¶ 25} "The Court: One thing concerns me, Mr. Ross. In your Motion anyway, you have referenced something that happened sometime prior with another Defendant. And my concern is that we limit ourselves strictly to the issue of the test as to Mr. Massie. I'll let you proceed on that basis alone. But it's going to have to be strictly — you're going to have to limit yourself to that. What may have happened with another Defendant is too much of a general attack.
 {¶ 26} "Mr. Ross: * * * That other Defendant was approximately 4 hours to my client, the same day. And his result, which, if it is odd, certainly indicates the machine could have been —
 {¶ 27} "The Court: Do you have any evidence of that? * * * did the same officer administer that test?
 {¶ 28} "Mr. Ross: No.
 {¶ 29} "The Court: Do you have that officer here?
 {¶ 30} "Mr. Ross: No.
 {¶ 31} "The Court: Then you can't get into it. You have no way to get into it.
 {¶ 32} "Mr. Ross. Well, I think I can at least present the documents from the machine.
 {¶ 33} "The Court: They don't tell me a thing. And the prosecutor can't cross-examine those documents."
 {¶ 34} Later, counsel for Massie asked Cockrell if he was aware "that the Ohio *Page 10 
Department of Health recommends in a directive to wait an additional 20 minutes in between each test attempt?" Cockrell responded in the negative, and counsel for Massie showed Cockrell the above memorandum. Cockrell indicated that he had never seen the memorandum, and the State objected to the its introduction. The trial court sustained the objection.
 {¶ 35} In overruling the motion, the court made the following comment regarding the memorandum: "It is a memo from an undocumented source. It is not a regulation, I would have to agree. In addition, it is contrary to anything this Court has ever learned about the operation of the machine and the administration of the tests. While there is, admittedly, an initial 20-minute observation period, that's to make certain that the subject doesn't, in fact, ingest anything or have any problems that we've talked about, vomiting and belching and burping and so forth. As long as the machine was properly clearing itself before the second and third tests were given so that there was no residual air left in the machine, and there is nothing before the Court to indicate that there was any residual air left in the machine from the first 2 failed tests, there is no reason in the world that the third test would not have been accurate in accordance with the design limits of the machine."
 {¶ 36} Our review of the record reveals that Massie's Daubert
challenge is misplaced. Essentially, this motion in limine parallels his motion to suppress, in that the crux of his argument is the machine was not operating properly and the test was not properly administered to him. Massie sought to make a general attack, by means of the test results of another defendant, whose test was administered by another officer, upon the reliability of his own test results, not upon the reliability of his specific testing procedure or the qualifications of the operator, as Vega allows. Massie's attack is forestalled by the "legislative mandate recognized in *Page 11 Vega," and the trial court properly limited Massie to the issue of his own test. The only evidence Massie offered to show that something went wrong with his specific test was an unenforceable memorandum, not a promulgated regulation. In conclusion, there was nothing before the trial court to indicate anything other than substantial compliance with ODH regulations. The trial court properly did not consider the evidence of Mr. Nein's test results and the Department of Health's memorandum, and the trial court properly determined that Massie's test results were admissible. Since the trial court did not abuse its discretion in overruling Massie's motion in limine, the judgment of the trial court is affirmed.
 WOLFF, P.J. and GRADY, J., concur. *Page 1