DECISION. *Page 2 
{¶ 1} Following a jury trial, defendant-appellant, Mark A. Fisher, was convicted of driving with a prohibited breath-alcohol content in violation of R.C. 4511.19(A)(1)(d). We find no merit in his four assignments of error, and we affirm his conviction.
 I. Facts and Procedure {¶ 2} On September 4, 2006, at approximately 11:45 a.m., Fisher was travelling north on I-71 in Hamilton County. Ohio State Trooper Christopher Krantz determined he was going 76 m.p.h. in a 55-m.p.h. zone and stopped him for speeding. Krantz did not observe any erratic driving.
 {¶ 3} When Krantz approached Fisher's car, he noticed that Fisher had slightly bloodshot eyes and a strong odor of alcohol about his person. Krantz asked to see Fisher's driver's license, and Fisher took 15 to 20 seconds longer than the average person to produce it.
 {¶ 4} Krantz asked Fisher to get out of his car, and Fisher complied. Initially, Fisher denied that he had been drinking, but he later admitted that he had been drinking the night before. Krantz then had Fisher perform three field sobriety tests. According to Krantz, those tests showed that Fisher was under the influence of alcohol, so Krantz arrested him. Fisher took an Intoxilyzer test. The results were .135 gram by weight of alcohol per 210 liters of breath.
 {¶ 5} Fisher was charged with driving while under the influence of alcohol under R.C. 4511.19(A)(1)(a) and driving with a prohibited breath-alcohol content under R.C. 4511.19(A)(1)(d). The trial court overruled his motion to suppress. A jury found *Page 3 
him guilty of driving with a prohibited breath-alcohol content, but it acquitted him of the other charge. This appeal followed.
 II. Search and Seizure {¶ 6} In his first assignment of error, Fisher contends that the trial court erred in overruling his motion to suppress. He argues that Krantz did not have a reasonable suspicion that he was involved in criminal activity to justify detaining him. He also argues that Krantz did not have probable cause to arrest him. This assignment of error is not well taken.
 {¶ 7} Appellate review of a motion to suppress presents a mixed question of law and fact. We must accept the trial court's findings of fact as true if competent, credible evidence supports them. But we must independently determine whether the facts satisfy the applicable legal standard.[1]
 {¶ 8} Once Krantz decided to detain Fisher beyond citing him for speeding, he had to have a reasonable and articulable suspicion that Fisher was subject to seizure for a violation of the law.[2] He had to be able to point to specific and articulable facts that, taken together with the rational inferences from those facts, reasonably warranted the seizure.[3]
 {¶ 9} According to Krantz, (1) Fisher had bloodshot eyes; (2) he had a strong odor of alcohol coming from his person; (3) he took 15 to 20 seconds longer than the average person to produce his driver's license; and (4) he initially denied that he had been drinking, but upon further questioning, he admitted that he had been drinking the *Page 4 
night before. These facts were sufficient to give Krantz a reasonable and articulable suspicion that Fisher had been driving under the influence of alcohol and justified him in detaining Fisher for further investigation.
 {¶ 10} Fisher also contends that Krantz did not have probable cause to arrest him. In determining whether probable cause to arrest existed, a court must ascertain whether, at the time of the arrest, the police officer had sufficient facts and circumstances within his knowledge to warrant a prudent person in believing that the defendant was committing or had committed an offense.[4]
 {¶ 11} In arguing that probable cause did not exist, Fisher relies upon this court's decision in State v. Taylor.[5] In that case, we stated that the "act of speeding at a nominal excess coupled with the arresting officer's perception of the odor of alcohol, and nothingmore, did not furnish probable cause to arrest the defendant for driving under the influence."[6]
 {¶ 12} In this case, facts beyond nominal speeding and an odor of alcohol existed to support probable cause. Fisher was going 22 m.p.h. over the speed limit, which was not nominal speeding. Along with the facts that we have already cited justifying Krantz's continued detention of Fisher, the trial court found that Fisher had performed poorly on three field sobriety tests and that Krantz had conducted those tests in substantial compliance with Ohio Department of Health regulations.[7]
 {¶ 13} Thus, the totality of the facts and circumstances supported a finding that Krantz had probable cause to arrest Fisher for driving under the influence of alcohol or *Page 5 
drugs. The trial court did not err in overruling Fisher's motion to suppress, and we overrule his first assignment of error.
 III. Limits on Cross-Examination {¶ 14} In his second assignment of error, Fisher contends that the trial court erred at the suppression hearing in refusing to permit him to cross-examine the state's expert witnesses about proficiency testing related to administering breath-alcohol tests and about repairs made to the breath-testing machine. He argues that he was entitled to review all the records mandated by Ohio Department of Health regulations. This assignment of error is not well taken.
 {¶ 15} A criminal defendant has the right to confront and cross-examine the witnesses against him, but that right is not unlimited.[8] Decisions regarding the extent and scope of cross-examination lie within the trial court's discretion.[9]
 {¶ 16} Sergeant John Crowell was the police officer who conducted the breath-alcohol test on Fisher. He testified on direct examination that he had passed a proficiency examination mandated by Ohio Department of Health regulations. On cross-examination, Fisher attempted to ask what questions he had passed on the proficiency examination. The state objected, and the trial court sustained the objection. Fisher argues he should have been able to question Crowell about his performance on the test.
 {¶ 17} Fisher further argues that he should have been allowed to question the police officers about repairs on the breath-testing machine. Officer Dennis Wells, a senior operator of the Intoxilyzer, testified that he had performed the instrument check *Page 6 
on the Intoxilyzer on the day of Fisher's breath test. He further testified that the instrument check had complied with the Ohio Department of Health's approved procedure.
 {¶ 18} Wells also testified that, in doing the instrument check, he had made sure that it was within a particular range. When asked if it had ever been out of range, he replied that it had. He stated that when it was out of range, "I down the unit and send it back to CMI and have them recalibrate the unit." Fisher asked about the records relating to when the machine was out of range, and the state objected on relevance grounds. The court sustained the objection.
 {¶ 19} In ruling on the objections to the testimony of both witnesses, the court stated that Fisher could have obtained that information during discovery, relying on this court's decision in Norwood v.Kahn.[10] In that case, we discussed the problem of shotgun motions to suppress, where "the defendant essentially regurgitates the administrative code and then waits for the police office to forget to testify about one of the aspects of compliance."[11] We decided to follow another appellate court's approach, holding that "to require the state to respond specifically and particularly to issues raised in a motion, an accused must raise issues that can be supported by facts, either known or discovered, that are specific to the issues raised. Unless an accused, either through discovery or cross-examination at the hearing, points to facts to support the allegations that specific health regulations have been violated in some way, the burden on the state to show substantial compliance with those regulations remains general and slight."[12]
 {¶ 20} We went on to state that "the emphasis is properly placed on the discovery process during which the defendant has an opportunity to determine whether *Page 7 
the state has failed to comply with a regulation. * * * `[T]o support a motion to suppress, with particular facts that would put the state on notice of the areas to be challenged, a defendant must first complete due and diligent discovery, on all issues which he or she intends to challenge, in the motion to suppress.'"[13]
 {¶ 21} This case involves a situation similar to that described inKahn. Fisher filed a general motion to suppress and asked questions on cross-examination with little relevance and no factual support.
 {¶ 22} Officer Crowell testified on direct examination that he had passed the proficiency test, and the state offered into evidence his senior-operator permit. Thus the state met its burden to show compliance with the regulations in that respect. Therefore, under Ohio law, Crowell was qualified to operate the Intoxilyzer and the issue of what questions he had passed on that test was irrelevant. Absent some information of an irregularity on the test, which should have been obtained in discovery, Fisher had no factual basis for his questions about the specifics of the test, and he was simply on a fishing expedition.
 {¶ 23} Similarly, Wells testified that he had performed the instrument check on the Intoxilyzer as the regulations required. Thus, the state met its burden to show compliance with the regulations in that respect. Wells indicated that at some point in the past, when the instrument was out of range, it was recalibrated. Absent some indication that the recalibration was defective in some way, information that Fisher could have obtained in discovery, he had no factual basis for inquiring about the calibration records. Therefore, they were irrelevant to the issues in this case. *Page 8 
 {¶ 24} We cannot hold that the trial court's decision to limit cross-examination on those matters was so arbitrary, unreasonable, or unconscionable as to connote an abuse of discretion.[14] Consequently, we overrule Fisher's second assignment of error.
IV. Expert Testimony about the Reliability of the Intoxilyzer
 {¶ 25} In his third assignment of error, Fisher contends that the trial court erred in failing to allow Steven Adams, his expert witness, to testify at trial about the reliability of the Intoxylizer. He argues that while expert testimony is not admissible to attack the reliability of Intoxilyzers generally, the court may admit testimony to attack the reliability of a particular instrument or operator. This assignment of error is not well taken.
 {¶ 26} A trial court has broad discretion in the admission of evidence, including expert testimony. This court will not reverse the trial court's decision absent an abuse of discretion.[15]
 {¶ 27} The Ohio Supreme Court has held that R.C. 4511.19 represents a legislative determination that that certain breath-testing devices are generally reliable. This determination means that the state has replaced the common-law foundational requirements for admissibility.[16]
Therefore, an accused may not make a general attack upon the reliability and validity of a breath-testing instrument.[17]
 {¶ 28} Nevertheless, the accused may attack the reliability of the specific testing procedure and the qualifications of the operator and may present expert testimony on these issues.[18] The accused "may endeavor to show something went wrong with his test *Page 9 
and that, as a consequence, the result was at variance with what the approved testing process would have produced."[19]
 {¶ 29} In this case, Adams testified that he had expertise and experience related to the Intoxilyzer machine. During voir dire, the court stated, "So I guess my question is, are you saying Ohio's procedure, as it relates to every single test is given and every arrest is faulty?" Adams replied, "Correct. Correct. It's not reliable and I would be explaining why." The court stated, "[T]he Court's going to rule that the procedure followed in the state of Ohio followed by the Montgomery Police Department in this case was the same procedure * * * that the Department of Health and everybody else puts out and the Court is going to rule they are in compliance. With that, the Court is going to exclude his testimony with regards to that issue."
 {¶ 30} Thus, the record shows that Adams's testimony was going to attack the reliability of breath tests in general, which is an issue the legislature has already decided. The trial court did not abuse its discretion in excluding that testimony. The trial court allowed Adams to testify regarding other issues, but Fisher never asked him about the specific test in this case. Consequently, we overrule Fisher's third assignment of error.
 V. Jury Instructions {¶ 31} In his fourth assignment of error, Fisher contends that the trial court did not properly instruct the jury. He argues that the court failed to tell the jury that Fisher had to have the prohibited breath-alcohol content "at the time of operation." This assignment of error is not well taken.
 {¶ 32} A trial court must fully and completely give all jury instructions that are relevant and necessary for the jury to weigh the evidence and to discharge its duty as the *Page 10 
factfinder.[20] An appellate court will not reverse a conviction due to improper jury instructions unless the defendant was prejudiced.[21]
Further, a single instruction cannot be judged in isolation, but must be viewed in the context of the overall charge.[22]
 {¶ 33} In this case, the trial court instructed the jury on all the statutory elements of driving with a prohibited breath-alcohol content under R.C. 4511.19(A)(1)(d). It told the jury that it had to find that Fisher had operated the vehicle on the day in question with a prohibited breath-alcohol content. Fisher was not prejudiced by any omission. We, therefore, overrule his fourth assignment of error, and we affirm his conviction.
Judgment affirmed.
HILDEBRANDT, P.J., and PAINTER, J., concur.
[1] State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372,797 N.E.2d 71, ¶ 8; State v. Burton, 1st Dist. No. C-080173,2009-Ohio-871, ¶ 8.
[2] Delaware v. Prouse (1979), 440 U.S. 648, 663, 99 S.Ct. 1391;State v. Robinette, 80 Ohio St.3d 234, 240, 1997-Ohio-343,685 N.E.2d 762; State v. Lopez, 166 Ohio App.3d 337, 2006-Ohio-2091,850 N.E.2d 781, ¶ 14-20.
[3] State v. Andrews (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271;Lopez, supra, at ¶ 13; State v. Kiefer, 1st Dist. No. C-030205, 2004-Ohio-5054, ¶ 11.
[4] State v. Heston (1972), 29 Ohio St.2d 152, 155-156,280 N.E.2d 376; Cincinnati v. Wolfe, 1st Dist. Nos. C-010303 and C-010304, 2001-Ohio-3916.
[5] (1981), 3 Ohio App.3d 197, 444 N.E.2d 481.
[6] Id. at 197-198. (Emphasis in original.)
[7] See 4511.19(D)(4)(b).
[8] Delaware v. Van Arsdall (1986), 475 U.S. 673, 678-679,106 S.Ct. 1431; State v. Rosemond, 1st Dist. No. C-060578,2007-Ohio-6333, ¶ 6-7; State v. Albanese, 11th Dist. No. 2005-P-0054, 2006-Ohio-4819, ¶ 56.
[9] State v. Faulkner (1978), 56 Ohio St.2d 42, 46, 381 N.E.2d 934;Rosemond, supra, at ¶ 7; Albanese, supra, at ¶ 56.
[10] 1st Dist. Nos. C-060497, C-060498, and C-060499,2007-Ohio-2799.
[11] Id. at ¶ 7.
[12] Id. at ¶ 8, quoting State v. Embry, 12th Dist. No. CA2003-11-110, 2004-Ohio-6324, ¶ 29.
[13] Id. at ¶ 9, quoting State v. Neuhoff (1997), 119 Ohio App.3d 501,506, 695 N.E.2d 825.
[14] See State v. Clark, 71 Ohio St.3d 466, 470, 1994-Ohio-43,644 N.E.2d 331.
[15] State v. Awkal, 76 Ohio St.3d 324, 331, 1996-Ohio-395,667 N.E.2d 960; Rosemond, supra, at ¶ 15.
[16] State v. Vega (1984), 12 Ohio St.3d 185, 188-189,465 N.E.2d 1303; State v. Massie, 2nd Dist. No. 2007 CA 24,2008-Ohio-1312, ¶ 15; State v. Luke, 10th Dist. No. 05AP-371, 2006-Ohio-2306, ¶ 22.
[17] Vega, supra, at 190; Massie, supra, at ¶ 15; Luke, supra, at ¶ 22.
[18] Vega, supra, at 189; Massie, supra, at ¶ 18; Luke, supra, at ¶ 25.
[19] Massie, supra, at ¶ 18; Luke, supra, at ¶ 26.
[20] State v. Comen (1990), 50 Ohio St.3d 206, 553 N.E.2d 640, paragraph two of the syllabus; State v. Robinson, 1st
Dist. No. C-060434, 2007-Ohio-2388, ¶ 18.
[21] Robinson, supra, at ¶ 18.
[22] State v. Price (1979), 60 Ohio St.2d 136, 398 N.E.2d 772, paragraph four of the syllabus; Robinson, supra, at ¶ 18. *Page 1