[Cite as *State v. Richards*, 2016-Ohio-3518.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-150356 |
| | | C-150357 |
| Plaintiff-Appellant, | : | TRIAL NOS. C-14TRC-58167A |
| | | C-14TRC-58167B |
| vs. | : | |
| | | *O P I N I O N.* |
| JONATHON RICHARDS, | : | |
| | | |
| Defendant-Appellee. | : | |

Criminal Appeals From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: June 22, 2016

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellant,

*James S. Arnold*, for Defendant-Appellee.

**DEWINE, Judge.**

{¶1} This is an appeal by the state from a trial court's decision that granted a motion to suppress in a drunk-driving case. The court suppressed evidence concerning field-sobriety tests that were performed by the suspected drunk driver following an accident. Having suppressed the test results, the court found that the arresting officer lacked probable cause to arrest the driver. The court also suppressed certain admissions that were made by the driver following his arrest. We conclude that one of the field-sobriety tests was properly suppressed, but the remaining tests and the driver's statements are admissible. We conclude further that the trooper had probable cause to arrest the driver. Thus we reverse the trial court's decision in part and remand the matter to the trial court.

## I.   Background

{¶2} Around 2:30 in the morning, Jonathon Richards drove his car off the interstate and crashed into a tree. A tow truck had to be called to pull the car from the tree. Three state troopers responded to the scene. According to testimony provided at the suppression hearing, Trooper Anthony Filak detected the odor of alcohol when he approached Richards. He noted that his eyes were watery and bloodshot and his speech was slow and deliberate. Mr. Richards claimed that he had fallen asleep while driving and said that he had had two beers earlier that night. He stated that his leg was the only thing that hurt, but repeatedly indicated that he did not want medical attention. He admitted to having one prior conviction for operating a vehicle while under the influence of alcohol ("OVI").

{¶3} Trooper Filak then administered field-sobriety tests to Richards. He testified that Richards exhibited two of six clues on the horizontal-gaze-nystagmus

("HGN") test. Richards's performance went downhill from there. He exhibited five of eight clues on the walk-and-turn test. The one-leg-stand test resulted in two of four clues. As a result, Trooper Filak placed Richards under arrest. In the police car, Mr. Richards elaborated on the two beers that he had consumed: according to Trooper Filak, he said that he had consumed two 24-ounce Stone IPAs.[1]

{¶4} Mr. Richards was charged with OVI, failure to maintain reasonable control of his vehicle and refusal to submit to a chemical test. He filed a motion to suppress the field-sobriety tests, his statements and the observations and opinions of the officers.

{¶5} At the suppression hearing, Trooper Filak testified as to his observations at the time of the arrest. In addition, video taken from cameras in both of the police cruisers that responded to the scene was admitted into evidence. The trial court granted the motion to suppress regarding each of the field-sobriety tests, concluding that the state had failed to meet its burden to show that the tests were performed in substantial compliance with National Highway Traffic Safety Administration ("NHTSA") standards. The court determined further that the troopers lacked probable cause to arrest and that statements made by Richards following his arrest were not admissible.

{¶6} This appeal followed. The state's sole assignment of error is that the court erred when it granted the motion to suppress.

## II. Shotgun Motion to Suppress

{¶7} As an initial matter, the state takes issue with the trial court's conclusion that it was required to provide specific evidence of substantial compliance with the

---

[1] He was likely a couple of ounces off. According to the Stone Brewing Company website, Stone IPA is sold in 22-ounce bottles (as well as traditional 12-ounce). *See* http://www.stonebrewing.com/beer/year-round-releases (accessed June 5, 2016). As is characteristic of the India pale ale (IPA) style, the Stone IPA contains significantly more alcohol per volume (6.9 percent) than a typical American lager or pilsner. *Id.*

3

testing standards for field-sobriety tests. It argues that because Richards filed a "shotgun" motion to suppress that failed to include particularized allegations relating to his arrest, its burden to demonstrate substantial compliance was "general and slight."

{¶8} This court has repeatedly discussed the problem of shotgun motions to suppress in which "the defendant essentially regurgitates the administrative code and then waits for the police officer to forget to testify about one of the aspects of compliance." *Norwood v. Kahn*, 1st Dist. Hamilton Nos. C-060497, C-060498 and C-060499, 2007-Ohio-2799, ¶ 7; *see State v. Fisher*, 1st Dist. Hamilton No. C-080497, 2009-Ohio-2258, ¶ 19. We have held that in order to require the state to respond specifically and particularly to the issues raised in the motion to suppress, the accused must raise issues that can be supported by facts that are specific to those issues raised. *Kahn* at ¶ 8. If the accused fails to point to facts to support his allegations that specific regulations have been violated in a specific way, the burden on the state to establish substantial compliance with those regulations is general and slight. *Id.*

{¶9} Richards's motion plainly falls into the "shotgun" category. It consists primarily of a regurgitation of the instructions required for each of the four tests and a blanket assertion that the officer did not provide *any* of the required instructions. It additionally provides a laundry list of citations to NHTSA regulations and a similar blanket assertion that the arresting officer failed to substantially comply with each of the regulations. There is nothing in Richards's motion that suggests it was prepared for this case in particular. It does not include even the most basic description of his accident or arrest. As a result, we find the motion insufficient to elevate the state's burden to prove substantial compliance from general and slight. *See Kahn* at ¶ 8; *see also State v. Fink*, 12th Dist. Warren Nos. CA2008-10-118 and CA2008-10-119, 2009-Ohio-3538, ¶ 28.

{¶10}    The accused, however, may shift the burden from general to specific by identifying facts that support his allegations on cross-examination. *Kahn* at ¶ 8.   That is what happened here.  Mr. Richards raised several factual matters on cross-examination that required the state to respond specifically and particularly to demonstrate substantial compliance as to those issues.

### III.    Field-Sobriety Tests

{¶11}    Trooper Filak administered three field-sobriety tests—an HGN test, a walk-and-turn test and a one-leg-stand test.  The trial court found the results of all three to be inadmissible because the state failed to prove the officers substantially complied with the NHTSA standards.  We agree that there was insufficient evidence of substantial compliance as to the HGN test, but conclude that the court erred in suppressing the results of the other tests

{¶12}    Review of a motion to suppress is a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.  We defer to the trial court's findings of historical facts unless the findings are clearly erroneous. *Cincinnati v. Bryant*, 1st Dist. Hamilton No. C-090546, 2010-Ohio-4474, ¶ 20.   A finding is clearly erroneous when, as the reviewing court, we are left with the definite and firm conviction that a mistake has been committed after examining all the evidence. *State v. Luckett*, 1st Dist. Hamilton Nos. C-070359, C-070360 and C-070361, 2008-Ohio-1441, ¶ 11, citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1947).

### A.  HGN Test

{¶13}    First, Trooper Filak administered the HGN test.  Trooper Filak moved a pen in front of Richards's eyes smoothly, making seven total passes from left to right. The passes varied from one to six seconds per side.  Trooper Filak estimated that, based

upon his common practice, he held the pen eight to ten inches from Richards's eyes during the test. He testified that Richards exhibited two of six possible clues on the HGN test—the test revealed a lack of "smooth pursuit" for each eye.

{¶14} At the conclusion of the test, Trooper Filak stepped back, shrugged and said, "You look all right." A nearby officer told him to "do them all." Trooper Filak then proceeded to administer the other tests. There is some dispute as to what should be made of Trooper Filak's statement. At the conclusion of the hearing, the judge said, "The impression I got from that statement was I don't think he was saying he looks all right, let's quit." Rather, "[i]t's like he looks all right, let's continue." The court added, "I can go either way with that so, I won't hang too much on that." In its written opinion, however, the court characterized the comment as reflecting the trooper's opinion that Richards had performed satisfactorily on the test and that his detention should end.

{¶15} In determining to suppress the HGN test, the court pointed to Trooper Filak's statement as well as evidence of failure to comply with various NHTSA standards. Because the basis of suppression was a failure to comply with NHTSA standards, we do not believe that Trooper Filak's statement—however one takes it—was particularly relevant. (Though of course, it could be relevant to the ultimate probable-cause determination). Nonetheless, we agree with the court's ultimate conclusion that the state failed to demonstrate substantial compliance with NHTSA standards in regards to the HGN test.

{¶16} It was the state's burden to show by clear and convincing evidence that the HGN test was performed in substantial compliance with the NHTSA standards. R.C. 4511.19(D)(4)(b); *see State v. Henry*, 12th Dist. Preble No. CA2008-05-008, 2009-Ohio-10, ¶ 10. The trial court found that the state failed to demonstrate substantial compliance in regards to several issues that had been brought out by the defense on

cross-examination. Specifically, it found that the arresting officer had failed to comply with standards requiring that he move the stimulus (the pen) in an even manner, hold the stimulus 12-15 inches from the suspect's face and face the suspect away from nearby traffic. It also concluded that on one of the passes, the officer had moved the stimulus too quickly. Giving deference to the trial court's factual findings, we conclude that the court did not err in determining that the state had failed to meet its burden to show substantial compliance. Thus, the HGN test was properly suppressed.

### B. Walk-and-Turn Test

{¶17}   Following the HGN test, Trooper Filak conducted the walk-and-turn test. He testified that Richards displayed five out of eight possible clues: he (1) failed to hold position during instruction, (2) took ten steps instead of nine, (3) failed to take his steps heel-to-toe, (4) stepped off the line and (5) conducted an improper turn.

{¶18}   In deciding to suppress the test, the court cited several ways in which the test did not meet the NHTSA standards. As an initial matter, the court found that the arresting officer had failed to ask Richards if he understood the test instructions. With respect to the five clues that Trooper Filak claimed Richards had displayed, the court agreed that one clue was clearly present: the video showed Richards taking ten steps rather than the requisite nine. But the remaining clues were found lacking. Contrary to Trooper Filak's testimony, the court determined that Richards had executed the turn during the test properly. Further, the video did not show Richards's feet during the test, and the court did not credit Trooper Filak's testimony that the defendant had not taken heel-to-toe steps as instructed. Finally, the court discounted Richards's failure to hold his position during instruction and his stepping off the line, suggesting that his performance could have been due to a leg or head injury or wind and noise caused by passing trucks.

7

{¶19} Our review of the cruiser video confirms the court's finding that Richards performed the turn properly. Thus, the court was correct to disregard Trooper Filak's testimony as to that clue. And absent contrary evidence on the video, we must defer to the court's credibility determination regarding Trooper Filak's testimony about the heel-to-toe steps. *See State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, ¶ 116; *State v. Williams*, 1st Dist. Hamilton Nos. C-060631 and C-060668, 2007-Ohio-5577, ¶ 45. But we cannot conclude that Trooper Filak's uncorroborated testimony about the missed heel-to-toe step and confusion on the turn rendered all of the evidence concerning the test inadmissible.

{¶20} The video confirms that Richards lost his balance more than once, including during the instructions and that he stepped off the line. In its decision, the court opined that Richards's performance may have been impacted by prevalent wind, noise and road dirt or "a constant flow of tractor trailers traveling at a high rate of speed." But Mr. Richards did not ask any questions regarding the wind, noise, dirt or traffic at the motion-to-suppress hearing. "[T]he state must have the opportunity to intelligently respond in an informed manner to the specific claims." *State v. Plunkett*, 12th Dist. Warren No. CA2007-01-012, 2008-Ohio-1014, ¶ 22. Indeed, while the video does demonstrate a few passing tractor trailers, there is no evidence at all in the record about wind or dirt. As a result, the state had no reason to address the potential wind, noise, dirt or traffic at the hearing. And the state's burden to demonstrate substantial compliance with NHTSA standards relating to such conditions was "general and slight." *See Kahn*, 1st Dist. Hamilton Nos. C-060497, C-060498 and C-060499, 2007-Ohio-2799, at ¶ 8. Following our review of the record, we conclude that the court's finding with respect to traffic, wind, noise and road dirt was clearly erroneous.

{¶21} The court also concluded that Richards's leg or head injury "could" have caused him to lose his balance or step off the imaginary line. Trooper Filak testified that pursuant to NHTSA standards the walk-and-turn test should not be performed if the subject is injured or cannot perform the test. However, throughout the stop, Mr. Richards had no difficulty walking or standing, other than when he lost his balance during the test. In the video, Mr. Richards repeatedly refuses medical attention and insists that he is okay. When Richards's counsel suggested in his closing that Richards may have had a leg injury, the court pointed out that Richards told the officers he was not injured and did not want to go to the hospital. Thus, we will disregard the court's unsupported speculation about a possible leg or head injury impacting the test results.

{¶22} Once we set aside the court's reliance on the effect of traffic, wind, dirt and noise and its reliance on the hypothetical injury, we do not believe that there was a sufficient basis to suppress the walk-and-turn-test evidence. The state demonstrated substantial compliance with the NHTSA standards. The court's finding to the contrary was in error.

## C. One-Leg-Stand Test

{¶23} The final test implemented by Trooper Filak was the one-leg-stand test. In its decision, the court noted that the video shows that Richards swayed and put his foot down during the test. In fact, Mr. Richards put his foot down five times. Nonetheless, the court chose to suppress the results of this test as well. In doing so the court again concluded that traffic, wind, noise and road dirt affected the test results. It discounted Richards's inability to complete the test without repeatedly putting his foot down, explaining that "it is not clear if the proximity to the interstate traffic was a contributing factor." It also once again relied upon the possibility that some injury might have affected Richards's performance.

{¶24} Here, again, Mr. Richards did not include the proximity to traffic, noise, wind and road dirt in his cross-examination, and thus the state's burden to establish substantial compliance with NHTSA standards relating to these conditions was "general and slight." *See Kahn* 1st Dist. Hamilton Nos. C-060497, C-060498 and C-060499, 2007-Ohio-2799, at ¶ 8. As we did with the walk-and-turn test, we conclude that the court's reliance upon these matters was clearly erroneous. Similarly, it was error for the court to rely upon unsupported speculation about a possible injury when Richards had repeatedly said that he was not injured.

{¶25} The court also noted the requirement that the test be conducted on a level surface. During cross-examination, Trooper Filak was asked whether the emergency lane where the test was conducted was "kind of sloped." He responded, "It might be slightly." The video does not demonstrate that the surface was unreasonably sloped. Based on Trooper Filak's testimony and the video evidence, we conclude that the state established substantial compliance in regard to this matter.

{¶26} Once we take out the matters upon which the trial court improperly relied, we conclude that the state met its burden to demonstrate substantial compliance with NHTSA standards relating to the one-leg-stand test. The court erred in suppressing the results of this test.

### IV. Probable Cause

{¶27} The trial court found that, because the field-sobriety tests were inadmissible, the troopers lacked probable cause to arrest Richards. Having determined that the court erred in suppressing two of the three tests, we also conclude that the court erred in finding that there was no probable cause to arrest.

{¶28} The standard for probable cause is whether "at the moment of the arrest, the police had sufficient information, derived from a reasonably trustworthy source of

facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence." *State v. Homan*, 89 Ohio St.3d 421, 427, 732 N.E.2d 952 (2000), *superseded by statue on other grounds as recognized in State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155. The test is objective. *State v. Deters*, 128 Ohio App.3d 329, 333, 714 N.E.2d 972 (1st Dist.1998). We apply de novo review to determine if the undisputed facts are sufficient to satisfy the legal standard of probable cause to arrest. *Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8; *see Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

{¶29} A minor traffic violation coupled with the odor of alcohol alone is insufficient to establish probable cause. *Bryant*, 1st Dist. Hamilton No. C-090546, 2010-Ohio-4474, at ¶ 25. But evidence of a minor traffic violation, the odor of alcohol, plus "some reasonable indicia" of impairment is sufficient to establish probable cause. *Id.* Here, the accident that Richards was involved in was more than a minor traffic violation: the vehicle was partially stuck in a tree and had to be removed by a tow truck, and the vehicle sustained significant damage. Trooper Filak detected the odor of alcohol when he approached Richards. His eyes were watery and bloodshot, and his speech was slow and deliberate. Mr. Richard admitted to having consumed alcohol. Further, Mr. Richards volunteered that he had a previous OVI. An officer's knowledge of a defendant's previous arrests is material to a probable-cause determination. *See Beck v. Ohio*, 379 U.S. 89, 97, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *State v. Craig*, 110 Ohio St.3d 306, 312, 853 N.E.2d 621 (2006); *State v. Kessler*, 53 Ohio St.2d 204, 373 N.E.2d 1252 (1978); *State v. Christopher*, 12th Dist. Clermont No. CA2009-08-041, 2010-Ohio-1816.

{¶30} On these facts we have little difficulty concluding that sufficient indicia of impairment existed to cause a prudent officer to conclude that Richards was impaired. Richards's single-car accident at 2:30 a.m.; red and watery eyes; odor of

alcohol; slow and deliberate speech; prior OVI; admission to consuming alcohol; and performance on the field-sobriety tests, taken together, established probable cause to believe that Mr. Richards was driving under the influence. *See State v. Sanders*, 1st Dist. Hamilton Nos. C-130193 and C-130194, 2014-Ohio-511, ¶ 11-12, (finding speeding and weaving; glassy, bloodshot eyes; moderate odor of alcohol on the driver's breath; and admission to drinking, but no slurred speech, motor difficulty or clues on the one-leg-stand test, was sufficient evidence to establish probable cause).

## V. Richards's Statements

{¶31} After the court found that Trooper Filak lacked probable cause to arrest, the trial court suppressed statements made by Richards following the arrest, including his admissions concerning consumption of the Stone IPAs. The court did not specify the basis for its ruling. One possible basis for the court's ruling was that it considered the statements to be the fruits of an illegal arrest. Another possible basis was Richards's contention that he had not been read his *Miranda* rights in the car. We have already determined that there was probable cause to arrest so we are left with the question as to whether Richards was properly "*Mirandized.*" *See Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 692 (1966).

{¶32} Trooper Filak testified that immediately after placing Richards under arrest he read him his *Miranda* rights. The defense argues that we should disregard Trooper Filak's testimony because there is no video evidence of Trooper Filak reading Richards his rights. Trooper Filak testified that he forgot to hit the record button initially and only hit the button as he was finishing reading Richards his rights. Trooper Filak's testimony was corroborated by a statement that is on the video. Mr. Richards can be heard to say, "Aren't you guys a little late on the *Miranda* thing?" Based on Trooper Filak's uncontroverted testimony, and Richards's statement, we conclude that

12

Trooper Filak did properly read Richards his *Miranda* rights. Thus, it was error for the court to suppress statements made following the arrest.

## VI. Conclusion

{¶33} The state's sole assignment of error is sustained in part and overruled in part. We therefore affirm the trial court's judgment to the extent it suppressed the results of the HGN test. The remainder of the judgment—the suppression of the results of the walk-and-turn and one-leg-stand tests and Richards's statements and the finding that there was no probable cause to arrest—is reversed. The case is remanded for proceedings consistent with the law and this opinion.

Judgment accordingly.

**CUNNINGHAM, P.J.,** and **MOCK, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.