DECISION. *Page 2 
{¶ 1} Because the trial would not likely have concluded prior to the unavailability of some of the jurors and the trial judge, the trial court did not abuse its discretion when it declared a mistrial and reset the trial date. A state trooper substantially complied with the law when administering field sobriety tests. A breathalyzer test was administered in substantial compliance with regulations promulgated by the Ohio Department of Health. For these reasons, we affirm.
 Erratic Driving Leads to Stop and Arrest {¶ 2} In this case, Judge Richard Bernat issued a thorough, 11-page decision on defendant-appellant Oksana Krumpelman's motion to suppress. Because of the deference that this court pays to factual findings, and because the judge's findings were supported by some competent, credible evidence, the facts in this decision are taken largely from the entry denying the motion.
 {¶ 3} Trooper Sidney Steele was waiting on the side of I-71 for a prisoner transfer when he saw a vehicle "weaving all over the road." There was another vehicle behind it flashing its lights and honking its horn. Steele pulled in behind the weaving vehicle and followed it for a quarter mile. He activated his overhead lights at the Fields Ertel Road exit. The car exited from the interstate, stopped at a red light, and proceeded left on Fields Ertel when the light changed.
 {¶ 4} Steele followed, with lights activated, as the vehicle turned onto Mason-Montgomery Road. Steele was forced to activate his siren and blow his horn in an attempt to get the vehicle to stop. The vehicle eventually stopped and Steele approached. He knocked on the window "to get [Krumpelman's] attention," and she rolled down the window. Krumpelman had a "dazed look on her face." When the *Page 3 
window was rolled down, Steele smelled "a strong odor of an alcoholic beverage about [Krumpelman's] person." He had to tell her three times to turn off the vehicle's ignition. When she got out of the car, various items fell from her lap onto the roadway. When Steele asked Krumpelman for her license and registration, she handed him her Russian driver's license.
 {¶ 5} Krumpelman initially denied having anything to drink. She later admitted to having come from a bar and that she had one beer there. After she got out of the car, Steele noticed that the strong odor of alcohol was coming from Krumpelman. Her eyes were glassy and bloodshot. She had a hard time standing up and was "uneasy on her feet." After failing three field sobriety tests, Krumpelman was arrested for driving under the influence of alcohol. At the station, Krumpelman took a breathalyzer test and registered a 0.140 level for her breath-alcohol content. Krumpelman was cited for driving under the influence, [1]
operating a vehicle without a license, [2] and failing to stay within marked lanes.[3]
 Eleventh-Hour Change in Trial Strategy Leads to Mistrial {¶ 6} After her motion to suppress was denied, the case was set for a jury trial. The jury was selected and sworn on the afternoon of November 13, 2007.[4] The next day, the trial court learned that counsel for Krumpelman had issued a subpoena to law enforcement seeking all the records for the Intoxilyzer used to test Krumpelman's breath-alcohol level. Counsel indicated that he was going to cross-examine law enforcement with these records. The record indicates that this *Page 4 
information was not discussed the day before, when the jury had been selected and sworn.[5]
 {¶ 7} According to the trial court, "it became immediately apparent to the court on that day following a discussion with counsel that it was not realistic to finish the trial within the week as first discussed." The problem was, according to the trial court, that many of the jurors were in their final week of service, and "they expected that their service would be completed [at the end of that week]." Additionally, the judge was scheduled to begin a week overseeing the arraignment docket and would not be available after the end of the week. In light of this, "the court felt that the reasonable thing to do was to declare a mistrial, dismiss the jury, and start over at a later date." The mistrial was "in part caused by an over[ly] optimistic estimate of trial time by counsel for both sides * * *." Krumpelman did not object.
 {¶ 8} On the day the trial was scheduled to begin, Krumpelman filed a motion to dismiss on double-jeopardy grounds. She argued that, because the jurors had been sworn, jeopardy had attached. The trial court denied the motion, and Krumpelman entered a plea of no contest to the four charges. She was found guilty and sentenced accordingly.
 Mistrial Declaration Proper {¶ 9} In her first assignment of error, Krumpelman argues that jeopardy attached when the trial court declared a mistrial after the jury had been sworn and that, as a result, a second trial was barred on double-jeopardy grounds. We disagree.
 {¶ 10} A trial court may declare a mistrial, sua sponte, if there is a manifest necessity or a high degree of necessity, or if the ends of public justice would *Page 5 
otherwise be defeated.[6] Jeopardy does not attach to such a dismissal.[7] The decision to dismiss a case in this manner will not be reversed absent an abuse of discretion.[8]
 {¶ 11} As a factual matter, the trial court concluded "that it was not realistic to finish the trial within the week as first discussed." Since a number of the panel would not be available thereafter, and the trial court was scheduled to begin another assignment, it was not an abuse of discretion for the trial court to conclude that these facts made dismissal "a manifest necessity or a high degree of necessity," or that "the ends of public justice would otherwise be defeated" if the dismissal did not issue.
 {¶ 12} We note that this case presents a unique factual situation. We caution trial courts that a sua sponte mistrial declaration is not a proper remedy for every instance of "overly optimistic" calendaring. Under the facts of this case, however, the decision was proper. We overrule Krumpelman's first assignment of error.
 Field Sobriety Tests: Substantial Compliance {¶ 13} In her second assignment of error, Krumpelman argues that the trial court should have suppressed the results of the three field sobriety tests administered by Steele because they were not performed in substantial compliance with the NHTSA manual. We disagree.
 {¶ 14} With regard to the Horizontal Gaze Nystagmus test, Krumpelman argues that there was no substantial compliance because Steele "failed to say that he was going to check appellant's eyes * * *." Therefore, "[b]ased upon Trooper Steele's testimony, he did not follow the specific procedures regarding giving the suspect the required instructions." *Page 6 
 {¶ 15} In support of this, she quotes the transcript where Steele said, "I have them stand facing me with their hands down at their sides. Then I ask them if they wear any glasses or contacts, or anything that they have medical conditions for, or anything like that. Once I do that, I check to make sure the pupil sizes are dilated properly." In her quotation of the transcript, however, Krumpelman omits the second sentence — and does not indicate that the sentence has been omitted by ellipses; that sentence reads, "I explain to them what I'm going to do at this point." Under these circumstances, we reject Krumpelman's argument on this point.
 {¶ 16} Regarding the One Leg Stand test, the basis for the argument is that the instructions require 114 words to be spoken and that Steele "failed to give 43% of the required instructions." The same is true with the Walk and Turn test, except that the math changes — with Krumpelman arguing that Steele omitted "49% of the required instructions."
 {¶ 17} We summarily reject the argument that substantial compliance can be resolved at the end of a mathematical equation. In her brief, Krumpelman sets out the instructions as they existed in the 2006 NHTSA testing standards. She then strikes through those words that she claims Steele failed to intone during the stop. Other than the percentage discrepancies, Krumpelman does not argue how Steele did not substantially comply with the NHTSA requirements or how the words left out were essential to establishing substantial compliance.
 {¶ 18} The General Assembly has determined that the officer must substantially comply with the NHTSA guidelines when giving the instructions for the field sobriety tests.[9] In each individual encounter, the officer must have some latitude in giving the instructions based on the circumstances of the encounter. Each *Page 7 
suspect brings a different set of challenges — not the least of which is the possibility of their impairment. Holding law enforcement to a script, or to some percentage of the script, defeats the flexibility that the General Assembly has built into the requirement.
 {¶ 19} We have reviewed the transcript of the hearing and the video recording of the stop. We agree with the trial court's conclusion that Steele administered the tests in substantial compliance with the NHTSA requirements. Krumpelman's second assignment of error is overruled.
 Breathalyzer Test Results {¶ 20} In her final assignment of error, Krumpelman argues that the breathalyzer testing machine was not properly calibrated. From this, she concludes that the results should have been suppressed. We disagree.
 {¶ 21} Krumpelman first argues that the testing trooper testified that he had heated the instrument-check solution to 34 degrees, plus or minus two degrees, when the standard is plus or minus 0.2 degrees. The trial court concluded as a factual matter that the testing trooper simply misspoke. It was within the purview of the trial court to reach this conclusion, and we will not disturb it on appeal.
 {¶ 22} Second, Krumpelman argues that the failure to blow into the simulator two times prior to connecting the simulator to the breathing instrument rendered the instrument check invalid. The testing trooper testified that this step was not on the Instrument Check Form, but that it did appear in the operational manual.
 {¶ 23} Krumpelman has not shown that following the Instrument Check Form, rather than the operating manual, amounted to less than substantial compliance. In fact, Ohio Adm. Code 3701-53-04 expressly states that "[a] senior *Page 8 
operator shall perform an instrument check on approved evidential breath testing instruments * * * in accordance with the appropriate instrumentchecklist for the instrument being used."[10] The regulation nowhere mentions compliance with the operational manual. The Twelfth Appellate District has recently reached the same conclusion, noting that "[t]he plain language of the ODH regulations does not require strict compliance with the operator's manual."[11]
 {¶ 24} During oral argument, Krumpelman noted the requirement that the manual be maintained near the machine and posited that this requirement exists for a purpose. The purpose, she muses, is that it is to be followed when operating the machine. But the statute requires following the regulations, and the regulations require following the checklist. If Krumpelman believes that the checklist is inaccurate, or that following the manual is preferable, her argument is with the Department of Health or the General Assembly. We overrule Krumpelman's third assignment of error and affirm the trial court's judgment.
Judgment affirmed.
HILDEBRANDT, P.J., and HENDON, J., concur.
[1] R.C.4511.09(A)(1) and 4511.09(A)(1)(D).
[2] R.C. 4510.12(A)(1).
[3] R.C. 4511.33.
[4] Facts for this portion of the decision are derived from the "Entry Extending Time" journalized by the trial court on November 15, 2007.
[5] This is troubling since Krumpelman issued the subpoena in the late afternoon of November 12 — the day before voir dire.
[6] Arizona v. Washington (1978), 434 U.S. 497, 505-506, 98 S.Ct. 824;State v. Widner (1981), 68 Ohio St.2d 188, 189, 429 N.E.2d 1065.
[7] Id.
[8] State v. Glover (1988), 35 Ohio St.3d 18, 517 N.E.2d 900, syllabus.
[9] See R.C. 4511.19(D)(4)(b).
[10] Ohio Adm. Code 3701-53-04(A) (emphasis added).
[11] State v. Browning, 12th Dist. No. CA2007-10-118, 2008-Ohio-2905, at ¶ 10. *Page 1