[Cite as *State v. Thorton*, 2018-Ohio-2960.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-170586<br>C-170587 |
| Plaintiff-Appellant, | : | TRIAL NOS. 17TRC-4320A<br>17TRC-4320B |
| vs. | : | |
| SHANE THORTON,[1] | : | *O P I N I O N.* |
| Defendant-Appellee. | : | |

Criminal Appeals From:  Hamilton County Municipal Court

Judgments Appealed From Are:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  July 27, 2018

*Paula Boggs Muething*, City Solicitor, *Natalia Harris*, City Prosecutor, and *Christopher Liu*, Appellate Director, for Plaintiff-Appellant,

*Rubenstein & Thurman, L.P.A.*, and *Scott A. Rubenstein*, for Defendant-Appellee.

---

[1] The defendant-appellee's surname is spelled "Thorton" and "Thornton" alternatively throughout the record.  We adopt the spelling contained in the trial court's judgments.

**MYERS, Judge.**

{¶1}    The state of Ohio appeals the order of the trial court granting a motion to suppress for lack of probable cause to arrest Shane Thorton for operating a motor vehicle while under the influence ("OVI").    Because the trial court erred in concluding that there was no probable cause for the arrest, we reverse.

### I.    Background Facts

{¶2}    While on patrol at about 3:00 a.m., Cincinnati Police Sergeant Michael Reynolds saw a car approaching him with its high beams on.  He made a U-turn and began to follow the car.  Then the driver of the car made a right-hand turn, and, in doing so, crossed two lanes of traffic and drove left of center.

{¶3}    Sergeant Reynolds stopped the car, which was driven by Shane Thorton.  An upright plastic cup was in the console.  The sergeant asked Thorton how much he had had to drink that night, and Thorton at first denied drinking.  When the sergeant asked for insurance information, Thorton tried several times to open the locked glove compartment with the wrong key.

{¶4}    Cincinnati Police Officer Raymond Marsh arrived on the scene to assist the sergeant.  Officer Marsh approached the driver's window and asked if Thorton had had anything to drink because he seemed "a little lethargic."  Officer Marsh testified that he used the term "lethargic" to mean that Thorton seemed confused and disoriented.  He testified that Thorton "was kind of slow to respond, multiple times he asked me why he had been stopped, when he had already been informed by Sergeant."

{¶5}    Thorton ultimately admitted to having had a drink earlier in the evening.  Officer Marsh noted that Thorton's eyes were watery, bloodshot, and glassy, and that his speech was slurred and slow.  The officer asked Thorton to get out of the car.  When he spoke to Thorton face-to-face, he noted an odor of alcohol.

{¶6} Officer Marsh had Thorton perform three field-sobriety tests. The officer observed multiple clues of impairment on each test. The officer observed four of six clues of impairment on the horizontal-gaze-nystagmus ("HGN") test. On the walk-and-turn test, the officer saw two of eight clues of impairment, which were Thorton's failing to walk heel to toe and stepping off the line. On the one-leg-stand test, the officer noted two of four clues of impairment, including swaying while balancing and putting a foot down during the test.

{¶7} After administering the tests, Officer Marsh again asked Thorton how much he had to drink, and this time Thorton motioned to the plastic cup in his car and said that there was gin in the cup. The officer placed Thorton under arrest.

{¶8} The trial court admitted into evidence video recordings from the body cameras worn by both police officers and a video recording from a police cruiser. The court also took judicial notice of the National Highway Transportation Safety Administration ("NHTSA") manual regarding field-sobriety testing.

## II. The Trial Court's Determination

{¶9} The trial court first found that the initial stop of Thorton was proper. It also made a specific finding that Officer Marsh had conducted the field-sobriety tests in substantial compliance with NHTSA standardized testing procedures. However, as to the results of the field-sobriety tests, the court stated, "[I]t's a closer call on the issue of the number of clues that were observed sufficient to ascertain probable cause for an arrest on the OVI." The court granted the motion to suppress "due to a lack of overall clues and demeanor, and the general - - generally appropriate conduct of the defendant as appears on the scene."

{¶10} According to the NHTSA manual, it is likely that a person's blood alcohol concentration (BAC) is 0.08 or higher if a person exhibits at least four out of six possible clues on the HGN test, or at least two out of eight possible clues on the

3

walk-and-turn test, or at least two out of four possible clues on the one-leg-stand test. *See* National Highway Transportation Safety Administration, *DWI Detection and Standardized Field Sobriety Testing Participant Manual*, (February 2018), https://www.nhtsa.gov/sites/nhtsa.dot.gov/files/documents/sfst_full_participant_manual_2018.pdf (accessed July 16, 2018).

{¶11} With respect to the HGN test, the court accepted the officer's finding of four out of six impairment clues, noting that "there seemed to be a majority of clues relative to that."

{¶12} As to the walk-and-turn test, after noting that it had been "quite cold and windy out there at 3:00 in the morning," the court stated that it believed that "for the conditions of the time and of the weather, * * * [Thorton] did pretty good and there were only two of eight clues observed as I noted." This was the same number of clues observed by Officer Marsh.

{¶13} As to the one-leg-stand test, the court acknowledged that Thorton exhibited at least one impairment clue by putting his foot down during the test. With respect to the officer's second stated clue, which was that Thorton swayed while balancing, the court explained that "it would not be uncommon for a person to lose their balance pretty easily under those conditions."

{¶14} As noted above, according to the NHTSA manual, four of six clues on the HGN test, two of eight clues on the walk-and-turn test, and two of four clues on the one-leg-stand test indicate that a person's BAC may be over 0.08.

{¶15} In examining whether the officers had probable cause to arrest Thorton, the court found that Thorton had committed multiple traffic violations by driving toward oncoming traffic with his high beams on and by improperly crossing over lanes of traffic. Although the court noted that Sergeant Reynolds had not testified about Thorton's having bloodshot eyes, the court did not comment on the uncontradicted testimony by Officer Marsh with respect to Thorton's bloodshot eyes.

{¶16} In addition, the court accepted the testimony by Officer Marsh that Thorton's speech was slow and slurred. The court acknowledged the evidence of slurring, but noted that "the way [Thorton] managed the language goes to the slurred part, that there is slurred speech under these circumstances, can be easily confused with a person, an ordinary citizen, kind of in a street context, that might be his normal pattern, potentially."

{¶17} Then the court concluded:

We can't know how much or how little alcohol [Thorton] had. It is fairly common that people when asked if they have had something to drink, almost invariably - - almost no one says more than two. And Mr. [Thorton] admitted to even less than that.

But having said all of that, and indicating that - - that he appeared to be pretty stable overall, in the [c]ourt's view. The motion to suppress as to the probable cause to arrest on the OVI is granted, due to a lack of overall clues and demeanor, and the general - - generally appropriate conduct of the defendant as appears on the scene.

### III. The Appeal

{¶18} The state now appeals. In a single assignment of error, the state argues that the trial court erred by granting the motion to suppress based on a lack of probable cause. We agree.

### A. Standard of Review

{¶19} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. We must accept the trial court's factual findings if they are supported by

competent, credible evidence, but we review de novo the trial court's application of the law to those facts. *Id.*

### B. Probable Cause

{¶20} To determine whether an officer had probable cause to arrest, courts "examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003), quoting *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). In the context of an OVI arrest, the standard for determining if an officer had probable cause to arrest is whether "at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence." *State v. Homan*, 89 Ohio St.3d 421, 427, 732 N.E.2d 952 (2000), *superseded by statute on other grounds as recognized in State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio 1251, 863 N.E.2d 155. In making this determination, courts examine the totality of the facts and circumstances surrounding the arrest. *Id.*

{¶21} Unlike "[f]inely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials," *Illinois v. Gates*, 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), probable cause "is not a high bar." *District of Columbia v. Wesby*, 138 S.Ct. 577, 586, 199 L.Ed.2d 453 (2018), quoting *Kaley v. United States*, 571 U.S. 320, 338, 134 S.Ct. 1090, 188 L.Ed.2d 46 (2014). The test for probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.*, quoting *Gates* at 243, fn. 13.

{¶22} In this case, the trial court conflated the test for probable cause to arrest an individual for OVI with the state's trial burden to prove the OVI offense beyond a reasonable doubt. The court "mistakenly believed that it could dismiss outright any circumstances that were 'susceptible of innocent explanation.' " *See Wesby* at 588, quoting *United States v. Arvizu*, 534 U.S. 266, 277, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). It discounted Thorton's slurred and slow speech as potentially being "his normal pattern" and Thorton's swaying during the one-leg-stand test as not being "uncommon" under the conditions. "But probable cause does not require officers to rule out [an] innocent explanation for suspicious facts." *Id.* The question "is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *Gates* at 243, fn. 13.

{¶23} In viewing each fact "in isolation, rather than as a factor in the totality of the circumstances," *Wesby* at 588, quoting *Pringle*, 540 U.S. at 372, 124 S.Ct. 795, 157 L.Ed.2d 769, fn. 2, the trial court "engaged in an 'excessively technical dissection' of the factors supporting probable cause." *Id.*, quoting *Gates* at 234. As the United States Supreme Court has cautioned, "[t]he totality-of-the circumstances test 'precludes this sort of divide-and-conquer analysis.' " *Id.*, quoting *Arvizu* at 274.

{¶24} We hold that the trial court's legal conclusion that the facts in this case did not provide probable cause to arrest was in error. The totality of the circumstances, based on the facts found by the trial court, provided probable cause to believe that Thorton was driving under the influence: (1) erratic driving, including the use of high beams despite oncoming traffic and a wide turn that crossed over multiple lanes of traffic; (2) he was slow to respond, lethargic, confused, and disoriented; (3) an odor of alcohol about him; (4) his slurred and slow speech; (5) his bloodshot and watery eyes; (6) his repeated attempts to open a locked glove compartment with the wrong key; (7) his admission to the consumption of alcohol; (8) four out of six clues of impairment on the HGN test; (9) two out of eight clues of

impairment on the walk-and-turn test; and (10) two out of four clues of impairment on the one-leg-stand test. *See State v. Rice*, 1st Dist. Hamilton Nos. C-160668, C-160669 and C-160670, 2017-Ohio-9114; *State v. Richards*, 2016-Ohio-3518, 67 N.E.3d 147 (1st Dist.); *State v. Bremenkamp*, 1st Dist. Hamilton Nos. C-130819 and C-130820, 2014-Ohio-5097.

{¶25} These facts, when considered as a whole, would cause an "objectively reasonable police officer" to believe that an OVI offense had occurred. Because Thorton's arrest was supported by probable cause, the trial court erred by granting his motion to suppress.

### C. Conclusion

{¶26} Therefore, we sustain the state's assignment of error, reverse the trial court's judgments granting the motion to suppress, and remand the matter for further proceedings consistent with law and this opinion.

Judgments reversed and cause remanded.

**CUNNINGHAM, P.J.,** and **ZAYAS, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.