[Cite as *State v. Watterson*, 2024-Ohio-5456.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240079 |
| | | TRIAL NO. C/23/TRC/17364/C |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N* |
| KENESA WATTERSON, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: November 20, 2024


*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Sarah E. Nelson*, Assistant Public Defender, for Defendant-Appellant.

**BOCK, Presiding Judge.**

**{¶1}** Defendant-appellant Kenesa Watterson appeals her conviction for operating her motorcycle while intoxicated. She challenges the trial court's denial of her motion to suppress field-sobriety and breathalyzer-test evidence. She argues that the State failed to show that the responding police officer (1) administered field-sobriety tests in substantial compliance with the National Highway Traffic Safety Administration ("NHTSA") standards; (2) substantially complied with the Ohio Administrative Code when administering a breathalyzer test; and (3) had probable cause to arrest her.

**{¶2}** We hold that the arresting officer had probable cause to arrest Watterson for operating her motorcycle while intoxicated based on the totality of the circumstances, which included the nature of Watterson's single-vehicle crash, the strong odor of alcohol emanating from Watterson, her imbalance before and during the field-sobriety tests, and her inability to count sequentially. We also hold that Watterson forfeited any challenge to the admissibility of the breathalyzer-test results when she failed to raise regulatory noncompliance in her motion to suppress.

**{¶3}** We overrule Watterson's assignment of error and affirm her conviction.

## I. *Factual and Procedural History*

**{¶4}** In July 2023, Watterson was riding her motorcycle in Cheviot, Ohio, when she caused a single-vehicle crash. As Cheviot police officers responded to the scene, Watterson was receiving medical treatment. Smelling alcohol, Cheviot Police Officer Peacock asked Watterson to perform field-sobriety tests. Watterson consented, but she did not do well on those tests. Peacock arrested Watterson and took her to the Green Township Police Department, where she consented to a breathalyzer test. That test revealed that her blood-alcohol content exceeded the legal limit.

**{¶5}** The State charged Watterson with two counts of operating a vehicle while intoxicated in violation of R.C. 4511.19(A)(1)(a) and (h), and one count of failing to maintain reasonable control of her vehicle in violation of R.C. 4511.202.

**{¶6}** Watterson moved to suppress "evidence obtained after her unlawful stop and warrantless seizure," including officers' "[o]pinion and/or observations . . . regarding Ms. Watterson's sobriety and/or alcohol level including . . . opinions or observations resulting from the administration of standardized or non-standardized field sobriety tests"; tests involving Watterson's coordination, sobriety, alcohol, or drug level; Watterson's statements; and physical evidence. Watterson argued that Officer Peacock failed to substantially comply with NHTSA's procedures for the horizontal-gaze-nystagmus, walk-and-turn, and one-legged-stand tests.

### *Suppression Hearing*

**{¶7}** Watterson asserted that the field-sobriety tests did not substantially comply with NHTSA standards and could not establish probable cause to arrest her. She also argued at the hearing that the breathalyzer test should be suppressed because the officer did not substantially comply with Adm.Code 3701-53-01.

**{¶8}** Officer Peacock testified that, as part of her police-officer training, she received "at least a week of traffic stops." She had 12 years of experience as a police officer. She had been trained on "OVI, field sobriety tests . . . just about everything." She testified that she has performed around 100 field-sobriety tests.

**{¶9}** On the day of Watterson's arrest, Peacock responded to "a single vehicle car crash" on Westwood Northern Boulevard. She encountered a "motorcycle that was laying [sic] down" and "Miss Watterson was scraped up pretty much from head to toe with road rash." Peacock remarked to other officers "that [she] smelled a fairly strong odor of alcohol coming from her." At the scene, medics "believed that she was under

the influence." Peacock had "walked over prior to even talking to [the medics and] smell[ed] an odor of alcohol."

**{¶10}** Watterson denied consuming alcohol and told Peacock that "she had just lost control." Peacock learned that Watterson "had actually slid[] off backwards from the motorcycle." Later, Peacock acknowledged that alcohol is odorless and testified that she could not tell when or how much alcohol Watterson had consumed. She also confirmed that she had not observed Watterson operating her motorcycle.

### *Field-sobriety testing under NHTSA*

**{¶11}** At the scene, Peacock requested that Watterson perform field-sobriety tests. Peacock smelled alcohol coming from "her person in general" during this interaction. Watterson was wearing a helmet and gloves, and Watterson "almost face planted" when she tried to place them on the ground.

**{¶12}** Peacock testified that she is "sure there is [an NHTSA] manual that exists specifically now," but she has not read or studied it. The trial court took judicial notice of the NHTSA's DWI Detection and Standardized Field Sobriety Testing Participant Manual.

**{¶13}** Peacock's approach to field-sobriety tests is guided by "the OPOTA training and the ARIDE class that [she] took." When conducting the tests, she relies on instructions from "the OVI packets" provided by her department. She assumed that the instructions came from the NHTSA, but she was "not really sure."

**{¶14}** Peacock explained that she "[r]an [Watterson] through the tests." But she could not remember asking Watterson if she had a head injury. Peacock recalled that Watterson "showed nystagmus," "skipped a few heel to toe touches on the walk and turn test," and was "[un]able to perform the one leg stand properly."

4

### A. *Horizontal Gaze Nystagmus*

**{¶15}** Peacock explained that she tested for "[h]orizontal gaze nystagmus," which is "an involuntar[y] bouncing of the eyes that is subconscious. No one can control it when they have drugs or alcohol in their system." This involves a stimulus—a pen or fingertip—held roughly "eight to twelve inches away from your face." There are three ways to test for nystagmus, which can reveal "six total clues" for intoxication, and Watterson "presented four."

**{¶16}** Peacock testified that she first asks if the driver wears glasses or contacts, but no other particular questions. She checks "the pupil size" to see if they are "very, very similar in size or the exact same." She instructs drivers to stand with their feet together and their hands down at their sides "in case we are looking for any kind of swaying . . . or losing balance, stepping out of feet together."

**{¶17}** Peacock administered the test and held her finger "[r]oughly to twelve [sic] inches" from Watterson's eyes and about an inch to an inch and a half above the horizontal plane from her eyes. She started in the center of Watterson's face.

**{¶18}** Peacock tested for a "lack of smooth pursuit, that both eyes are tracking the same back and forth," which reduces the "possibility [that] someone has a head injury or anything of that sort." During the test, she also looks "for unconscious bounce that would be present." She moves her finger roughly two seconds to the outside of the driver's eyelid. She was looking to see Watterson's eyes "until they touch the outside of her eyelid" and then she moved her finger back. Peacock believed she saw a bounce.

**{¶19}** She tested for nystagmus at the maximum deviation, which "is simply just taking the stimulus out as far as you possible [sic] can . . . to see that unconscious bounce." The stimulus reaches further than the test for lack of smooth pursuit, "as far

5

out as the eye will go before it stops and you hold it there for a second and bring it back." Peacock tested Watterson twice to verify each result.

**{¶20}** Finally, she tested Watterson for nystagmus at a 45-degree angle, which involves moving a stimulus "up about to 45 degrees." She "saw a small amount [of bounce] but not enough to warrant giving it a clue on either eye."

### B. *One-legged stand*

**{¶21}** Next, Peacock administered a "one leg stand" test. The driver "choose[s] whichever leg they want" and holds one foot six inches off the ground while counting "one thousand one, one thousand two" for 30 seconds. It assesses the driver's balance and coordination. Drivers have around four opportunities to pass the test. Peacock tests drivers on flat ground and screens for conditions that would affect the driver's ability to perform the test. If the driver puts a foot down, "most people pick their foot back up and continue counting."

**{¶22}** She acknowledged that footwear and several health issues could affect a driver's performance, such as knee, back, or foot injuries. Peacock acknowledged that a head injury would mirror impairment in these tests.

**{¶23}** Watterson told Peacock she was unsure if she would be able to perform the test. Her crash resulted in abrasions on her elbows, arms, and legs. Watterson had four opportunities to pass the test, but failed due to "the number of times she put her foot down," which forced Peacock to restart the test. And after starting the test Watterson "was not staring at her foot and [Peacock] had to remind her to stare at her foot." Plus, Watterson "counted one, one thousand eight several times."

### C. *Walk-and-turn test*

**{¶24}** Finally, Peacock administered a "walk and turn" test. As the officer provides instruction, the driver must "stand in a certain position." This allows the

officer to test the driver's balance before starting the test. As for the test itself, the driver must picture an invisible line and "walk on this line heel to toe nine steps," then turn "and then come back nine steps." Intoxication reveals itself through gaps between the driver's heel and toe, swaying, stepping off the line, or lifting arms for balance.

{¶25} Peacock ensured that Watterson understood the instructions before beginning the test. She testified that Watterson missed several heel-to-toe touches, and "stepped off the line several times" before starting the test.

{¶26} Peacock determined that Watterson was under the influence and her ability to control her motorcycle was substantially impaired based on the field-sobriety tests, her imbalance when placing her helmet and gloves on the curb, and the single-vehicle crash. The Cheviot Police Department's "intoxilizer machine was down," so Peacock drove Watterson to the Green Township Police Department for breath-alcohol testing. Peacock read Watterson her *Miranda* rights and explained her rights regarding breathalyzer testing. Watterson agreed to take a breathalyzer test. As Peacock readied the machine, she again asked Watterson if she wanted to take the test "because some people decide to change their mind." Once again, Watterson consented.

{¶27} The trial court denied Watterson's motion to suppress. It found Peacock "very credible," citing Peacock's refrain from relying on the "holy trinity of impairment" to justify the arrest. It found that probable cause existed to arrest Watterson for operating a vehicle while under the influence and Peacock performed the field-sobriety tests "in substantial compliance with the NHTSA manual." Probable cause justified her arrest based on the "totality of the circumstances," which included a "single vehicle accident" where Watterson "slid[] off the rear or back of the motorcycle," the smell of alcohol, and Watterson's imbalance when she placed her gloves and helmet on the ground.

**{¶28}** Watterson pleaded no contest to operating a vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(h), a first-degree misdemeanor. The court sentenced her to 160 days, all suspended, plus 20 days in the Hamilton County Community Alternative Sentencing Center. The court suspended Watterson's driver's license for two years and placed her on six months of community control.

## II.    *Analysis*

**{¶29}** Watterson argues in her single assignment of error that the trial court should have suppressed the results of the field-sobriety and breathalyzer tests. First, she argues that Officer Peacock failed to substantially comply with the NHTSA manual when she administered the field-sobriety tests, rendering the results inadmissible. Second, she argues that the breathalyzer test ran contrary to the Ohio Administrative Code and should have been suppressed. Third, she argues that Peacock lacked probable cause to arrest her for operating a vehicle while intoxicated.

**{¶30}** We do not reach the merits of Watterson's field-sobriety-tests arguments for two reasons. First, Peacock had probable cause to arrest Watterson independent of the field-sobriety-tests results. Second, Watterson failed to challenge her breathalyzer-test results in her motion to suppress, which forfeits that argument on appeal.

**{¶31}** An appeal challenging the trial court's decision to deny or grant a motion to suppress presents a mixed question of law and fact. *State v. Richards*, 2016-Ohio-3518, ¶ 12 (1st Dist.). We defer to the trial court's factual findings unless they are "clearly erroneous." *Id.* But we review the trial court's application of the law de novo. *State v. Rasool*, 2022-Ohio-3409, ¶ 5 (1st Dist.).

**{¶32}** A warrantless arrest is constitutionally permissible when the arresting officer has probable cause to make the arrest. *City of Cincinnati v. Bryant*, 2010-Ohio-

8

4474, ¶ 14 (1st Dist.). Probable cause is "'a probability of substantial chance of criminal activity, not an actual showing of such activity.'" *State v. Thorton*, 2018-Ohio-2960, ¶ 21 (1st Dist.), quoting *District of Columbia v. Wesby*, 583 U.S. 48, 49 (2018), quoting *Illinois v. Gates*, 462 U.S. 213, 235 (1983). An arresting officer has probable cause if she is aware "'of facts and circumstances sufficient to cause a prudent person to believe the suspect was driving under the influence of alcohol, drugs, or both.'" *Rasool* at ¶ 6, quoting *State v. Montelauro*, 2011-Ohio-6568, ¶ 20 (10th Dist.).

**{¶33}** Probable cause to arrest a person for driving while intoxicated may be established with the results of a field-sobriety test. *See State v. Walker*, 2023-Ohio-3586, ¶ 28 (7th Dist.). Those results are admissible so long as "the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time." R.C. 4511.19(D)(4)(b). NHTSA standards are reliable, credible, and generally accepted. *Id.* If the State establishes substantial compliance, the officer may testify about the results at trial, or the State can introduce the results as evidence. R.C. 4511.19(D)(4)(b)(i)-(ii).

**{¶34}** The State must establish substantial compliance with clear and convincing evidence. *Richards*, 2016-Ohio-3518, at ¶ 16 (1st Dist.). Substantial compliance determinations are made "on a case-by-case basis." *City of Parma Hts. v. Dedejczyk*, 2012-Ohio-3458, ¶ 42 (8th Dist.). Officers administering field-sobriety tests "have some latitude in giving the instructions based on the circumstances of the encounter." *State v. Krumpelman*, 2008-Ohio-6689, ¶ 18 (1st Dist.).

**{¶35}** In addition to field-sobriety-test results, the totality of the circumstances may establish probable cause that a person was under the influence of alcohol. *State v. Fuqua*, 2022-Ohio-1952, ¶ 20 (1st Dist.). For instance, "[e]vidence of a minor traffic infraction, the odor of alcohol, and 'some reasonable indicia' of

impairment is sufficient to establish probable cause." *Id.* at ¶ 21. And we have held that probable cause exists to arrest a driver for driving under the influence when, "in the early morning hours a vehicle clearly goes out of control, there is an accident, and the driver has the odor of alcoholic beverages on his breath." *State v. King,* 2003-Ohio-1541, ¶ 28 (1st Dist.). Significantly, the totality of the facts and circumstances include the police officer's observations of the driver's performance on field-sobriety tests even if the results must be suppressed. *See State v. Kaczmarek*, 2015-Ohio-3852, ¶ 11 (1st Dist.) ("[E]ven though the results of the HGN test were suppressed, the trooper's observations regarding Kaczmarek's performance on that test can be considered in determining probable cause for an arrest").

**{¶36}** Here, the trial court found Peacock's testimony credible. Peacock described smelling a strong odor of alcohol emanating from Watterson. Watterson slid off the back of her motorcycle and caused a single-vehicle crash. She nearly "face planted" when trying to place her gloves and helmet on the ground. And Peacock observed Watterson lose her balance and struggle to count during the field-sobriety tests. We hold that the totality of the circumstances established probable cause to arrest Watterson for operating a vehicle while under the influence of alcohol.

**{¶37}** Following her arrest, Peacock administered Watterson's breathalyzer test. While she argues on appeal that the trial court should have suppressed that evidence, Watterson failed to raise a regulatory-compliance argument challenging the breathalyzer test results in her motion to suppress.

**{¶38}** Under Crim.R. 47, motions, including motions to suppress evidence, must "state with particularity the grounds upon which [they are] made and shall set forth the relief or order sought." When a motion to suppress "fails to state a particular basis for relief, that issue is waived and cannot be argued on appeal." *State v. Demus*,

2011-Ohio-124, ¶ 13 (2d Dist.). This particularity requirement affords the State an opportunity to prepare its case and the trial court the ability to "rule on evidentiary issues at the hearing and properly dispose of the merits." *Id.*, quoting *Xenia v. Wallace,* 37 Ohio St.3d 216, 218 (1988).

**{¶39}** Watterson's motion makes only passing references to the fact that she took a breathalyzer test and fails to mention the Ohio Administrative Code. Her motion states, in its recitation of the facts, that she was transported to the Green Township Police Department and "submitted to two breath samples." Her motion does state that "the results of the breath test must . . . be suppressed," but it bases that contention on the alleged lack of probable cause to arrest her for operating a vehicle while under the influence.

**{¶40}** Watterson acknowledges that her motion to suppress merely stated that she challenged "any test" related to her blood-alcohol level. But she argues that her opening statement during the hearing stated, with the requisite particularity, that the State could not establish substantial compliance with the relevant sections of the Ohio Administrative Code. But particularized information during an opening statement at a suppression hearing does not cure a defendant's failure to specifically state a ground for suppression in a prehearing motion. The State "is not required to anticipate the specific legal and factual grounds for a defendant's challenge to a warrantless search or seizure." *State v. Billings*, 2021-Ohio-2194, ¶ 15 (1st Dist.). While particularity does not require "excruciating detail," the motion must "provide[] sufficient notice to the [S]tate." *State v. Codeluppi*, 2014-Ohio-1574, ¶ 13.

**{¶41}** In sum, the totality of the circumstances, including the nature of her motorcycle crash, the smell of alcohol, and officer observations before and during field-sobriety testing, established probable cause to arrest Watterson for operating her

motorcycle while under the influence of alcohol. And because Watterson failed to raise a regulatory-compliance challenge to her breathalyzer-test results in her motion to suppress, she has forfeited that argument on appeal.

**{¶42}** We overrule Watterson's assignment of error.

### III. Conclusion

**{¶43}** Because the arresting officer had probable cause to arrest Watterson, we overrule her assignment of error and affirm her conviction.

Judgment affirmed.

**CROUSE** and **WINKLER, JJ.,** concur.


Please note:

The court has recorded its entry on the date of the release of this opinion.