[Cite as *State v. Ponce-Suares*, 2025-Ohio-4480.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                          :          APPEAL NO.   C-240669
                                                   TRIAL NOS.   C/24/TRC/12545/A/B/C
    Plaintiff-Appellee,             :

vs.                                     :

JERICKSON PONCE-SUARES,                 :
                                                        *JUDGMENT ENTRY*
    Defendant-Appellant.            :


This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgments of the trial court are affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.


**To the clerk:**

**Enter upon the journal of the court on 9/26/2025 per order of the court.**


**By:**_____
       **Administrative Judge**

[Cite as *State v. Ponce-Suares*, 2025-Ohio-4480.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                   :        APPEAL NO.   C-240669
                                          TRIAL NOS.   C/24/TRC/12545/A/B/C
    Plaintiff-Appellee,      :

  vs.                            :

                                          *O P I N I O N*
JERICKSON PONCE-SUARES,          :

    Defendant-Appellant.     :


Criminal Appeal From: Hamilton County Municipal Court

Judgments Appealed From Are: Affirmed

Date of Judgment Entry on Appeal: September 26, 2025


*Connie Pillich*, Hamilton County Prosecuting Attorney, and *Candace Crear,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Sarah E. Nelson*, Assistant Public Defender, for Defendant-Appellant.

**MOORE, Judge.**

{¶1}     Defendant-appellant Jerickson Ponce-Suares[1] appeals the denial of his motion to suppress and argues that the officer did not administer the field sobriety tests ("FSTs") in substantial compliance with the requirements set forth by the National Highway Traffic Safety Administration ("NHTSA"). He asserts his convictions for first-degree misdemeanor operating a motor vehicle while under the influence of alcohol ("OVI"), in violation of R.C. 4511.19(A)(1)(a), driving without a license, an unclassified offense, in violation of R.C. 4510.12(A)(1), and minor-misdemeanor marked-lanes infraction, in violation of R.C. 4511.33, were based on the evidence that should have been suppressed.

## I.  Factual and Procedural History

### The Motion to Suppress

{¶2}     Ponce-Suares filed a motion to suppress on August 5, 2024. He argued (1) his warrantless arrest was not supported by probable cause, (2) the officer who administered the FSTs was not certified to administer the tests, which jeopardized the results or the tests were not properly administered according to NHTSA guidelines, (3) the officer did not comply with the procedures set forth by NHTSA for the horizontal-gaze-nystagmus ("HGN") and walk-and-turn[2] ("WAT") tests, (4) the results of the portable breathalyzer test ("PBT") were inadmissible at trial and should not be relied on to determine whether probable cause existed, and (5) his statements were obtained in violation of his Fifth and Sixth Amendment rights under the United States Constitution as applied to the states through the Fourteenth Amendment and

---

[1] While appellant's name is spelled "Ponce-Suraez" on appeal, we use the spelling, "Ponce-Suares" as reflected in the filings at the trial level.
[2] The motion also addressed the one-leg stand, a test which was not administered to Ponce-Suares.

Article I, Section 10 of the Ohio Constitution.

**The hearing on Ponce-Suares' motion to suppress.**

{¶3}     The trial court held a hearing on Ponce-Suares' motion on September 25, 2024. Amberly Village Police Officer Brian Thompson testified that he is trained in OVI, attends continuing OVI training annually, has training in the admission of FST results during a trial, and is an OVI instructor. Officer Thompson also testified that he stays up to date on changes to the NHTSA manual.

*The Stop*

{¶4}     Officer Thompson testified that he stopped Ponce-Suares on May 5, 2024, after Ponce-Suares' car veered into his lane and nearly struck his police cruiser. Officer Thompson followed Ponce-Suares' vehicle and observed him commit marked-lane violations, so he activated the motor vehicle recorder ("MVR") on his cruiser. The recording from the MVR was played in open court.

{¶5}     For reasons not made clear in the record, Ponce-Suares drove his car into the driveway of the Amberly Village Fire Department. Officer Thompson parked his cruiser behind Ponce-Suares' car, got out, and approached Ponce-Suares' car. Officer Thompson testified that neither Ponce-Suares nor his passenger spoke English. He later stated that Ponce-Suares stated that he understood a little bit of English.

{¶6}     Officer Thompson testified that he immediately noticed that Ponce-Suares had bloodshot and watery eyes, and he smelled alcohol coming from inside the car. Officer Thompson used Google Translate to communicate with Ponce-Suares and the passenger. Using Google Translate, Officer Thompson explained that he stopped them because Ponce-Suares nearly hit the police cruiser, and afterward, the car Ponce-Suares was driving was "swerving." Officer Thompson then asked them if they had

drunk any alcohol that evening. Ponce-Suares did not respond, while the passenger admitted to drinking four beers.

{¶7} The video from Officer Thompson's body-worn camera ("BWC") was introduced. Officer Thompson had Ponce-Suares get out of his car to complete the FSTs. Officer Thompson testified that he could smell alcohol coming from Ponce-Suares' mouth as he spoke.

### *The Horizontal Gaze Nystagmus (HGN)*

{¶8} Officer Thompson used Google Translate to give him instructions for the HGN. Officer Thompson asked Ponce-Suares if he had any relevant medical conditions, and if he wore glasses or contacts. Officer Thompson testified that he held the pen used in the test approximately ten to 12 inches from Ponce-Suares' face. Officer Thompson instructed Ponce-Suares to focus on the tip of the pen that Officer Thompson was holding and to "move [his] eyes" following the pen, but not to "twist" his head. In English, he told Ponce-Suares to put his hands at his side and put his feet together while demonstrating what he was instructing Ponce-Suares to do. As Ponce-Suares continued to move his head, Officer Thompson again instructed him to keep his head still, using Google Translate to state, "Please keep your head still, only move your eyes to follow the pen."

{¶9} In English, Officer Thompson told Ponce-Suares to put his hands on his chin, motioning his hands to guide Ponce-Suares's hands to his chin, and proceeded with the test. Although Ponce-Suares' eyes cannot be seen on the BWC the entire time, the BWC captures him looking away from the pen. The footage shows that Officer Thompson completed approximately nine passes.

{¶10} Officer Thompson testified that he observed that Ponce-Suares' pupils were equal in size, and the first clue he observed was the "lack of smooth pursuit, equal

tracking," and then he observed "distinct sustained nystagmus at maximum deviation," which totaled six clues. Officer Thompson testified that he had no indication that his results were invalid.

{¶11} On cross-examination, Officer Thompson acknowledged that Ponce-Suares had difficulty understanding the instructions. He also conceded that he touched Ponce-Suares' chin during the test to lower it for the test. Officer Thompson testified that he had gotten "tidbits" of the results of the test prior to lowering Ponce-Suares' chin and, although Ponce-Suares moved his head when he was told to keep it still, Officer Thompson was able to note "jerking of the eyes."

### The WAT

{¶12} Officer Thompson testified he did his "best to explain and demonstrate the instructions" for the WAT. He instructed Ponce-Suares to take nine steps. Officer Thompson acknowledged that Ponce-Suares had difficulty understanding the instructions and he had to stop the test repeatedly to re-explain the instructions.

{¶13} Officer Thompson recounted his discussion with the other two officers on the scene about the admissibility of the FSTs due to the language barrier, which he testified prompted him to administer the PBT. Officer Thompson was heard on the BWC telling the officers that he was "giving up on the OVI" and he "can't do this." He also told them, "On motion to suppress they're going to throw everything," because Ponce-Suares did not understand the instructions. He also told the officers that Ponce-Suares' eyes were "shot" and that he was drunk, but he did not know what to do at that point because none of the officers spoke Spanish.

{¶14} Although the footage shows that Officer Thompson stopped the WAT, he testified at the hearing that the clues he observed were improper number of steps taken and improper turn. He stated that Ponce-Suares "did okay" with maintaining

his balance throughout the test.

**{¶15}** Officer Thompson testified on cross-examination that he was comfortable with the HGN results, but the WAT was where he "start[ed] to become uncomfortable" due to his inability to communicate with Ponce-Suares. Officer Thompson explained that he did not include the WAT results on the administrative license suspension ("ALS") form, but the HGN result was included because he felt comfortable with it. He clarified on redirect examination this was because a subject must "perform something" in a WAT, in contrast to the HGN which "is present without having [the subject] to perform anything."

### The Portable Breathalyzer Test (PBT)

**{¶16}** Officer Thompson testified that Ponce-Suares consented[3] to the PBT, which resulted in a blood alcohol level ("BAC") of .170. He did not recall whether the test was administered using Google Translate. He explained his understanding that the PBT is an "investigatory tool and not a probable cause tool."

### The trial court denies Ponce-Suares' motion to suppress.

**{¶17}** The trial court denied Ponce-Suares' motion. It found that the HGN and WAT were administered in substantial compliance with NHTSA standards and that strict compliance or higher standard is not required. The trial court further found that probable cause existed based on Ponce-Suares' "bad driving," as evinced by the MVR. The court concluded that this, coupled with the strong odor of alcohol coming from the vehicle and Ponce-Suares' mouth, his bloodshot eyes, the six observed clues on the HGN, and his difficulty with performing the WAT established probable cause to arrest Ponce-Suares for OVI.

---

[3] This is not reflected in the State's video evidence, so the court only had testimony to rely on as to whether Ponce-Suares consented to the PBT.

{¶18} After finding that the PBT results were "unnecessary," the trial court stated that it would not consider the PBT. It further stated that it could find no authority suggesting that PBT results were admissible in the State's case-in-chief, so it did not believe the results of the PBT were admissible at trial, [4] nor could they establish impairment under R.C. 4511.19(A)(1)(a).

### Ponce-Suares pleads no contest to OVI

{¶19} Ponce-Suares pleaded no contest on October 29, 2024. On the OVI, the trial court sentenced him to 180 days in jail with 177 days suspended, ordered him to complete the driver's intervention program, and imposed community control. The court imposed a one-year driver's license suspension, $110 in costs, $500 in fines, and a $25 public defender fee. The trial court remitted the costs and fines on the convictions for driving without a license and driving outside of marked lanes.

{¶20} This appeal followed.

### II. Analysis

{¶21} Ponce-Suares states in his merit brief that he "appeals from his convictions on the basis" of the denial of his motion to suppress.

### A. Standard of Review

{¶22} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and evaluate witness credibility. *Id.* at ¶ 7. A reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support the trial court's findings. *State v. Calo-Jiminez*, 2023-Ohio-2562, ¶ 27 (1st

---

[4] Counsel stated that there is a split on the case law, and this court had not considered the issue.

Dist.).

**{¶23}** We review a trial court's conclusions of law on a motion to suppress de novo. *Id.* Accepting the trial court's factual findings as true and without deference to the conclusion of the trial court, the appellate court must independently determine whether the facts satisfy the applicable legal standard. *Id.*

### B. Ponce-Suares' motion to suppress was properly denied.

**{¶24}** Under Crim.R. 47, motions—including motions to suppress evidence— must state with particularity the assertions made and shall set forth the relief or order sought. *State v. Watterson*, 2024-Ohio-5456, ¶ 38 (1st Dist.). When a defendant files a motion to suppress FST results, the State's burden varies depending on whether the motion is specific or "shotgun." *State v. Parks*, 2025-Ohio-191, ¶ 33, (1st Dist.), quoting *State v. Richards*, 2016-Ohio-3518, ¶ 8 (1st Dist.). A "shotgun" motion generally states the FST standards without identifying which, if any, of the guidelines the officer failed to comply with. *Id.* In such a case, the burden on the State to establish substantial compliance with those regulations is "general and slight." *Id.*

**{¶25}** The accused who filed a "shotgun" motion, however, may shift the burden from "general and slight" to "specific" by identifying facts that support his allegations on cross-examination. *Id.*, quoting *Richards* at ¶ 10. A defendant must present a specific question of compliance as to each test to elevate the State's burden to substantial compliance. *Id.* at ¶ 36. The State then must show that clear and convincing evidence reflects that the FSTs were performed in substantial compliance with NHTSA requirements. *Id.*, citing *Richards* at ¶ 16; *see* R.C. 4511.19(D).

**{¶26}** Clear and convincing evidence is the measure or degree of proof which is more than a mere preponderance of the evidence but does not require the extent of such certainty as with the reasonable-doubt standard. *State v. Dickey*, 2023-Ohio-

9

705, ¶ 10 (1st Dist.). Errors that are excusable under the substantial-compliance standard are characterized as minor procedural deviations. *Burnside*, 2003-Ohio-5372, at ¶ 34. Otherwise, when a motion to suppress does not particularly state the basis for relief, the issue is waived and cannot be argued on appeal. *Watterson* at ¶ 38.

**{¶27}** On appeal, Ponce-Suares asserts that Officer Thompson deviated from NHTSA standards by (1) asking him to place his fists under his chin instead of instructing him to keep his hands at his sides as mandated by NHTSA, (2) failing to move the pen in compliance with NHTSA's timing standard by holding it for four seconds during the HGN at the appropriate angle as shown by the BWC footage, (3) not checking each eye twice during the HGN, and (4) only completing nine passes, all of which lasted for varying lengths of time. Ponce-Suares further asserts that the instructions were not given in certified Spanish and that Google Translate translated Officer Thompson's question as to whether Ponce-Suares "wears" glasses or contacts to "works with" glasses or contacts. Ponce-Suares further asserts that his continued movement of his head during the HGN after replying, "[Y]es, mas o menos"—which is, "yes, more or less" in English—demonstrates his "confusion" as to the instructions.

**{¶28}** Of the issues he raised on appeal regarding which standards Officer Thompson deviated from, Ponce-Suares only specifically raised the language barrier, Officer Thompson's discomfort with the reliability of the WAT due to the language barrier, and the deviation from the standard instructions on the HGN in his motion to suppress. The remaining issues raised on appeal are, therefore, forfeited and this court declines to advance an argument for Ponce-Suares as he failed to raise a plain-error argument regarding these issues. *See Watterson*, 2024-Ohio-5456, at ¶ 30 (1st Dist.) (Appellant forfeited her argument as to the results of the breathalyzer test on appeal where she failed to challenge them in her motion to suppress); *In re G.W.*, 2024-Ohio-

1551, ¶ 24 (1st Dist.) (An appellate court need not advance a plain-error argument that a party fails to raise on appeal).

Probable cause existed to arrest Ponce-Suares for OVI

**{¶29}** The standard for determining whether an officer had probable cause to arrest a suspect for OVI is whether the facts and circumstances within the police officer's knowledge are sufficient to cause a reasonably prudent person to believe that the defendant was driving under the influence. *State v. Duncan*, 2025-Ohio-1153, ¶ 24 (1st Dist.). In making this determination, an appellate court examines the totality of facts and circumstances surrounding the arrest. *Id.*

**{¶30}** In *State v. Ferguson*, 2013-Ohio-5388, ¶ 14 (1st Dist.), this court stated that an OVI entails driving a car after consuming alcohol in a quantity that adversely and appreciably impairs the driver's actions or mental processes and deprives him of clearness of intellect and control of himself which he would otherwise have had. *Id.*

**{¶31}** Ponce-Suares asserts that, notwithstanding the fact that he smelled of alcohol and had watery and bloodshot eyes, his alertness and cooperation with Officer Thompson's instructions gave no indication that his actions or mental processes were appreciably impaired. He also argues that the alcohol smell is explained by the passenger who admitted to drinking, the marked-lane violations he made were "relatively minor," and his nearly colliding with a police cruiser is "just as easily explained by a distracted sober driver." He further contends that the odor of alcohol "does not necessarily give rise to probable cause to arrest for OVI in the absence of other indicia of impairment."

**{¶32}** The totality of the circumstances supports a finding that probable cause existed to arrest Ponce-Suares for OVI. Any failure to instruct Ponce-Suares in substantial compliance with NHTSA standards would not negate the other factors that

existed during the stop, as FSTs are not necessary to establish probable cause to arrest for an OVI. *See State v. Sanders*, 2014-Ohio-511, ¶ 10 (1st Dist.) ("The totality of the facts and circumstances can support a finding of probable cause to arrest even without evidence of field-sobriety tests.").

{¶33} In *Sanders*, this court held that the trooper had sufficient facts within his knowledge to warrant a prudent police officer to believe that Sanders had been operating a motor vehicle while under the influence of alcohol where Sanders was traveling 14 miles over the speed limit, weaved within his lane of travel, had "bloodshot, glassy eyes," an odor of alcohol emanated from the car and his breath even after he got out of the car, and he admitted to consuming alcohol. *Id*. at ¶ 11-12.

{¶34} Ponce-Suares would like this court to conclude that this driving behavior could be attributed to distracted driving. As in *Sanders*, however, Ponce-Suares exhibited bad driving and there were other indicia of intoxication. Taking into consideration Ponce-Suares' traffic infractions along with the smell of alcohol coming from his car and mouth, and his bloodshot, glassy eyes, the totality of the circumstances provide sufficient indicia of intoxication to support probable cause to arrest him for OVI even if the HGN or WAT were suppressed. *See Cincinnati v. Bryant*, 2010-Ohio-4474, ¶ 15 (1st Dist.) (Defendant's driving in reverse in the wrong way on a one-way street was "more suggestive of impairment" than a minor traffic violation); *Watterson*, 2024-Ohio-5456, at ¶ 35 (1st Dist.), quoting *State v. Fuqua*, 2022-Ohio-1952, ¶ 21 (1st Dist.) ("Evidence of a minor traffic infraction, the odor of alcohol, and 'some reasonable indicia' of impairment is sufficient to establish probable cause.").

{¶35} Ponce-Suares asserts that the PBT was not relevant to determining probable cause given its unreliability, and thus, should not be considered for purposes of probable-cause review. This court, however, declines to address this argument as

the trial court did not consider the PBT results in rendering its decision.

**{¶36}** Ponce-Suares' sole assignment of error is overruled.

### *III. Conclusion*

**{¶37}** Where Ponce-Suares almost ran his vehicle into a police cruiser, committed marked lane infractions, had bloodshot and watery eyes, and smelled of alcohol, FSTs were not necessary to establish probable cause to arrest him for OVI. Having overruled Ponce-Suares' challenges to his arrest, we affirm the trial court's judgments denying his motion to suppress and convicting him of the charged offenses.

Judgments affirmed.

**CROUSE, P.J.,** and **BOCK, J.,** concur.